# Anniston Loan & Trust Company v. Stickney.

*Action on Endorsement of Promissory Note.*

1. *Negotiable note; designated place of payment.*—When a promissory note is made, having a place of payment expressed, the place may be distinguished, individualized and rendered certain by extrinsic evidence.

2. *Same; taking renewal note.*—The giving of a promissory note or bill of exchange, without more, is not a satisfaction of a previous indebtedness. The only effect thereof is, ordinarily, to suspend the

[Anniston Loan & Trust Company v. Stickney.]

remedy until the maturity of such bill or note.

3. *Same; time of payment.*—Where a promissory note otherwise negotiable, contains a provision that it is to be extended for six months from maturity, if so desired by the maker or endorsers, such provision does not destroy its negotiability.

APPEAL from Anniston City Court.

Tried before Hon. JAMES W. LAPSLEY.

The facts upon which the opinion in this case is based, are sufficiently shown therein.

KNOX, BOWIE & PELHAM, for appellant.—The place of payment of the note is sufficiently certain.—*Rudolph v. Brewer*, 96 Ala. 189; *Bait v. Carr*, 54 Ala. 112; *Potter v. Sheets*, 32 N. E. Rep., 811; *Brown v. First Nat. Bank*, 15 So. Rep., 435. The agreement for extension of the note did not affect its negotiability.—Tiedeman Com. Pa., § 25; *Nelson v. Manning*, 53 Ala. 549; *Gaines v. Dorsett*, 18 La. Ann., 563; *Knight v. Reynolds*, 37 Tex. 204; *Atcheson v. Scott*, 51 Tex. 213; *Chicago Ry. Co. v. Merchants Bank*, 136 U. S. 268; 113 U. S. 140; *Morton v. N. O. & S. Ry. Co.*, 79 Ala. 590; 15 Am. Rep., 542.

MATTHEWS & WHITESIDE, *contra.*—The note did not evidence an absolute promise to pay at all events. The provision endorsed upon the back of the note was a part thereof, and destroyed its negotiability. The place of payment of the note was not sufficiently designated.—*Rominger v. Keyes*, 73 Ind. 376; Tiedeman Com. Paper, 82, note 4.

BRICKELL, C. J.—The suit was founded on the defendants indorsement of a promissory note, which is in these words and figures:

"$1100.00       Anniston, Ala., February 11th, 1893. Six months after date, I promise to pay to the order of Benj. Micou, eleven hundred dollars. Value received. Negotiable and payable at Anniston Loan and Trust Company, of Anniston, Ala.

And in case this note is not paid at maturity and suit is brought for its collection, we agree to pay ten per cent. attorney's fees; and each of us, whether maker or endorser, hereby waive and renounce for myself and family any and all homestead or exemption rights we

may have guaranteed to us by the constitution, or statute laws of the State of Alabama, or any of the United States.

V. H. Marshall.

. Due Aug. 1—14.

Certificate No. 42 for 31 shares of the capital stock of the Anniston Transfer attached as collateral."

(Endorsed on back.)   "It is hereby agreed that this indebtedness is to be extended for six months from the maturity of this note, if so desired by the makers and endorsers, upon their giving a new note similar to this.

John H. Noble, Sec.<br>Benj. Micou,<br>R. H. Stickney, Jr.

Demand, notice and protest waived, Aug. 14, '93.

Benj. Micou,<br>R. H. Stickney, Jr.

The trial was had before the judge of the city court, without the intervention of a jury. The pleadings are voluminous, but the case involves only one question of merit and importance, and as that was directly presented and decided by the city court, we shall consider and determine it, without reference to any matter of mere pleading. That question is, whether the instrument indorsed, has the essential qualities and properties of a promissory note governed by the commercial law.

Though, according to the law merchant, a promissory note is not confined to any set form of words, whatever are the words employed, they must import an unconditional promise to pay to another's order or to bearer, a certain sum of money at a time therein specified.—Story on Promissory Notes, § 1. To these essential requisites of a promissory note, certainty in obligation, certainty in the money to be paid, and certainty in the time of payment, the statute adds certainty of the place of payment—to be negotiable and governed by the commercial law, the statute require that the note be payable "at a bank, or private banking house, or a certain place of payment therein designated."—Code, § 1756.

At the time of making the indorsement of the instrument, The Anniston Loan & Trust Company was a corporation engaged in the business of banking, having a known place of business in the city of Anniston. This fact was shown affirmatively by extrinsic evidence, ren-

dering certain the place at which the instrument was payable, whether we read it as payable at a bank, "or at a certain place of payment therein designated." When a promissory note is made, having a place of payment expressed, the place may be distinguished, individualized and rendered certain by extrinsic evidence, for the same reason, that when the description in an instrument of writing of persons or things, or places, is vague and general, or is applicable to several persons, or several species of things, or several places, extrinsic evidence may be received to give application to the description.—1 Green. Ev., § 288; *Rudolph v. Brewer*, 96 Ala. 189.

The note and the agreement thereon endorsed, must be read and construed as if they were embodied in and formed a single writing  So reading and construing them, the contention is, that the note was not payable in money, but payable in another similar note, or in any event, that the time of payment was uncertain, and of consequence, the note is wanting in the essential qualities of an obligation to pay money, and of certainty in the time of payment.

The error of the contention in the first respect seems obvious. It is not payment, satisfaction of the obligation resting upon the makers and endorsers, which the endorsement contemplated, or which upon any just construction can be deduced from its words. All that was contemplated, was that the maker and indorser, should have the option or privilege of extending the debt, not of paying it, by giving a new note similar to the existing note. The giving of a promissory note or bill of exchange without more, is not satisfaction of a pre-existing indebtedness. The only effect of taking such note or bill, is, ordinarily, to suspend the creditor's remedy upon the original indebtedness, until the maturity of such note or bill.—1 Brick. Dig., 287, §§ 501–02.

In *Keel v. Larkin*, 72 Ala. 493, it was said : "The giving of the debtor's own note or bill, even though negotiable, does not, according to what is deemed the better doctrine as settled in this State, operate to discharge such debt unless accepted in absolute payment."

In *Lee v. Green*, 83 Ala. 491, it was also said : "It is the settled doctrine in this State that when the debtor gives his own security, of no higher nature, for a pre-

existing debt it is considered, in the absence of an agreement express or implied, as collateral or additional security or a conditional payment, which does not operate an extinguishment of the original debt, but an extension of the time of payment."

In 2 Dan. on Neg. Instruments, § 1226, it is said: "It is a general principle of law that one simple executory contract does not extinguish another for which it is substituted, and negotiable securities form no exception. And by the general commercial law, as well of England as of the United States a bill of exchange drawn or promissory note made by the debtor does not discharge the precedent debt for which it is given, unless such be the agreement of the parties." The same author, in Vol. 2, § 1266a, further says : "The delivery or surrender to the maker of the old note upon its being renewed does not in itself raise a presumption of its extinguishment by the new, it being considered as a conditional surrender, and that its obligation is restored and revived if the new note be not duly paid." To the same effect is *Crockett v. Trotter*, 1 Stew. & Port. 446. And in 3 Randolph on Com. Paper, § 1511, it is said : "The renewal of a bill or note is not in general payment."

But it is insisted, that reading the indorsement, as it must be read, as if it was incorporated in the body of the note, the time of payment is contingent, uncertain, and the contingency or uncertainty is destructive of its negotiability. The authorities to which we have been referred in support of the proposition, have been carefully examined and considered.—*Citizens' Bank of Piollet*, 126 Pa. St. 194 ; (S. C. 4 L. R. A. 190; 12 Am. St. 860 ;) *Second National Bank v. Wheeler*, 75 Mich. 546 ; *First National Bank v. Carson*, 60 Mich. 432. In the first case, a promissory note had on its margin, a memorandum in these words : "This note is given for advancements, and it is the understanding it will be renewed at maturity." The court, after declaring that it is a necessary quality of negotiable paper that it should be single, certain, unconditional, not subject to any contingency, said, it was manifest, "that the only inquiry necessary to determine the question of negotiability is, the effect of the memorandum upon the terms of the note. As we have seen, it makes an important change in the note, in that, instead of the note being a distinct contract to pay

a fixed sum of money at a day certain, the holder has agreed to accept, instead of payment in money, another note payable at another time which is not fixed. The obligation of the note, therefore, is uncertain, depending on whether the maker chooses to pay it or give a new note in place of it.'' In the second case, on its face, the note contained this stipulation: ''and the payee or holder of this note may renew or extend the time of payment of the same from time to time as often as required without notice, and without prejudice to the rights of such payee or holder to enforce payment against the makers, sureties, and indorser, and each of them, parties hereto, at any time when the same may be due and payable.'' In the last case, the note contained a stipulation, that the sale or removal of the property, the price of which was the consideration of the note, should cause it to mature. The court said the time of payment was not certain; ''it is made dependent, until the contract matures, upon the fact of whether the defendant shall sell or remove the property for which the contract was made.''

These cases are manifestly distinguishable from the present case. The first two cases, the stipulation for a renewal of the note, was vague, indefinite—there was no time fixed, beyond which it should not, or to which it should extend. This material element was left to future negotiation and the future agreement of the parties; and as it was dependent on future negotiation and agreement, the result of which could not be known or anticipated, the time of payment of the renewed note was necessarily contingent and uncertain. Apparently, this was present in the mind of the Pennsylvania court, when rendering the decision in the case first cited. But in this case there can be no occasion, as there is no room for future negotiation. If the maker and indorser, exercise the option or privilege of renewing the note, of extending the day of payment, the endorsement declares the precise time of the extension, in clear, certain and precise words: ''this indebtedness is to be extended for six months from the maturity of this note, if so desired by the maker and endorsers.''

The argument is, that as it cannot be known until the maturity of the note, whether the makers and indorsers will exercise the option or privilege of renewal, the pay-

ment is contingent. The renewal, or failure to renew, is an event which must necessarily happen, and happen at a precise, fixed day. Certainty of the time of payment, is an essential quality of negotiable paper, by which is intended that there must be a period fixed by the parties, or by implication or construction of law, or an event prescribed, which must necessarily happen.—Story on Prom. Notes, § 27. It would serve no useful purpose, and would necessarily prolong the opinion, to notice the cases in which there was a contingency of payment, destructive of the negotiability of the paper; and cases in which such contingency was pronounced not to exist. It is the contingency of payment, which destroys negotiability. In 1 Chitty on Bills, 173, top p., it is said : "With respect to the time when payment is to be made, it depends entirely on the agreement of the parties, and there is no limitation in point of law, though the payment must not be contingent. In *Clayton v. Gosling*, 5 Barn. & Cressw., 360, the note was payable twelve months after notice, with lawful interest. It was said by Abbott, C. J.: "there is not any contingency as to the debt, for that is admitted to be due. Nor is the time or payment contingent, in the strict sense of the expression ; for that means a time which may or may not arrive ; this note was made payable at a time which we must suppose would arrive." In *Cota v. Buck*, 7 Metc. 588, it was said by Shaw, C. J.: "The true test of the negotiability of a note seems to be, whether the undertaking of the promisor is to pay the amount at all events, at some time which must certainly come, and not out of a particular fund, or upon a contingent event."

This is the true test of negotiability—if the paper be for the payment of a sum certain, absolutely, at a time which must certainly come, or on an event which must inevitably happen, it is negotiable. It was not payment of the debt, the indorsement contemplates—it was but an extension of the day or time of payment. Not a vague, indefinite extension, the time of which rested in the future negotion or agreement of the parties, but an extension the duration of which is precisely fixed and declared. If there was not renewal, the note was payable at its maturity ; if there was renewal, the time of payment was fixed and certain. Renewal, or the failure to renew, was an event which must inevitably happen. There is no

force in the suggestion, that whoever might acquire the note after maturity, could not know or ascertain without inquiry, whether there had or not been a renewal. It is not contemplated that negotiable paper shall pass current after maturity, and whoever might take the note after maturity, would take it at his own peril. But whoever acquires it before maturity, would read on its face in connection with the indorsement, that there was no contingency about its payment; no uncertain event, which might or might not happen, on which the duty and obligation to pay depended. That the renewal, or failure to renew, an event which must happen at the day of payment fixed by the note, and would determine no more, than whether the day of payment should be extended to a future day and time certain. I am not aware of any authority, or principle, which would justify a declaration, that there is that want of certainty in the time of payment, or that contingency of payment, which deprives the note of negotiability.

The time of payment is precise—the money is demandable six months after the date, or twelve months thereafter. By the terms of the note and indorsement, which are inseparable, it was to be the one or the other; and the means of ascertaining or determining whether it was to mature at the one day or the other were definitely and conclusively provided; no holder could ever be involved in doubt or uncertainty as to the happening of any contingency on which payment depended, or as to the time of payment. Under this view, the note must be regarded as payable absolutely in money at a bank, or private banking house, at a time certain, fulfilling all the conditions, and having the qualities requisite to commercial paper.

The city court erred in rendering judgment for the defendant. Its judgment is reversed and a judgment will be here rendered in favor of appellant (plaintiff in the lower court) for the amount of the note sued on, with interest from August 11, 1893, together with the costs of suit and costs of appeal in this court and in the court below.

Reversed and remanded.