[L. A. No. 2711.   In Bank.—August 7, 1912.]

## THE NAVAJO COUNTY BANK (a Corporation), Appellant, v. A. O. DOLSON et al., Respondents.

NEGOTIABLE INSTRUMENTS—PRESUMPTION AS TO LAW OF ANOTHER STATE.
The laws of a sister state respecting negotiable instruments, in the absence of evidence thereof, are presumed to be the same as the laws of California.

ID.—ARIZONA LAW—INDORSEMENT BEFORE DELIVERY—LIABILITY AS INDORSER—NECESSITY OF NOTICE OF DISHONOR OR NONPAYMENT.—Both by the laws of Arizona and California (Rev. Stats., Ariz., secs. 3367, 3392; Civ. Code, Cal., sec. 3117), a person not otherwise a party to a negotiable instrument who indorses his signature thereon in blank before delivery to the payee, is liable as an indorser, in the absence of words indicating his intention to be bound in some other capacity, and notice of dishonor or nonpayment is essential to fix his liability, in the absence of waiver on his part of the right to such notice.

ID.—NEGOTIABLE CHARACTER OF INSTRUMENT—PLACE OF MAKING OF CONTRACT—DELIVERY.—Whether a note is a negotiable instrument is to be determined by the law of the place where the contract between the parties was made. Ordinarily, the place where the contract is made depends not upon the place where it is written, signed, or dated, but upon the place where it is delivered as consummating the bargain.

ID.—DEPOSIT IN MAIL WHEN NOT DELIVERY TO ADDRESSEE—AGENCY OF CARRIER.—The deposit by one party in the mails of an instrument properly addressed to the other party, with postage thereon prepaid, does not constitute a delivery to the other party at the time and place of the deposit, unless it was made under such circumstances that the carrier can reasonably be considered the agent of the party

to whom the instrument is addressed, rather than purely the agent of the depositor.

ID.—DEPOSIT IN MAILS TO PAYEE OF NOTE IN ANOTHER STATE—ACCEPTANCE OF PAYEE OF NOTE UPON ITS RECEIPT—PLACE OF CONTRACT.—Where a promissory note, properly signed by the maker and indorsed, is mailed by the maker in one state, for purposes of negotiation and acceptance, to the payee named therein at his address in another state, and is there accepted and discounted by the payee, who until the receipt of the note through the mails had no intimation of the transaction, the state in which the note was accepted by the payee must be deemed to be the state in which it was made, and the effect of the contract is to be determined by the laws of that state.

ID.—DEPOSIT A MERE OFFER UNTIL ACCEPTANCE.—Under such circumstances, the deposit of the note in the mails was the deposit of a mere offer or proposition to the person named as payee, and the place where the proposition was received, accepted, and acted on was the place where the contract was made.

ID.—NEGOTIABLE INSTRUMENTS UNDER LAWS OF ARIZONA—WAIVER BY MAKER OF LAWS INTENDED FOR HIS ADVANTAGE—PROVISION FOR ATTORNEY'S FEES AND COSTS OF COLLECTION.—Under the provisions of the statutes of Arizona (Rev. Stats., secs. 3305, 3308), the negotiable character of an instrument is not affected by a provision which waives the benefit of any law intended for the advantage or protection of the obligor; and the amount payable thereby is a sum certain, within the meaning of the law defining negotiable instruments, although it is to be paid "with costs of collection or an attorney's fee in case payment shall not be made at maturity." Such provisions have not been affected by the enactment in 1905, of section 3847 of the Revised Statutes, defining a negotiable promissory note.

ID.—CERTAINTY IN TIME OF PAYMENT—RIGHT TO DEMAND PAYMENT.—A note is negotiable, so far as its negotiable character depends upon certainty in the time of payment, if the time when the holder has the absolute right to demand payment is prescribed with certainty.

ID.—PROVISION BY MAKER FOR EXTENSION OF NOTE WITH CONSENT OF HOLDER.—A note, specifically providing for the payment thereof on a certain time after date, is not rendered uncertain as to the time of payment, by a provision whereby the makers agreed "That after maturity this note may be extended from time to time by any one or more of us without the knowledge or consent of any of the others of us, and after such extension the liability of all parties shall remain as if no such extension has been made." Such provision did not give the maker the right to extend the time of payment, without the consent of the holder, or limit the right of the latter to demand payment on maturity.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Charles Monroe, Judge.

The facts are stated in the opinion of the court.

Sidney J. Parsons, and U. T. Clotfelter, for Appellant.

J. N. O. Rech, and George Beebe, for Respondents.

ANGELLOTTI, J.—This is an action by plaintiff corporation to recover the amount due upon a note executed and delivered by the White Mountain Health Resort, a corporation, against three persons who, before the delivery of the note, signed their names in blank upon the back thereof.   No notice of nonpayment or dishonor of said note was ever given to defendants or either of them, the first notice or demand upon them for payment being the complaint filed herein.   The question presented is whether notice to defendants of such nonpayment or dishonor was essential to a recovery against them. The trial court held, upon the facts found by it, that said notice was essential and gave judgment for defendants.   This is an appeal by plaintiff from such judgment.

There is no dispute as to the material facts which, in addition to the matters already stated, are as follows: Plaintiff is a banking corporation organized under the laws of Arizona, its place of business being Winslow, Arizona.   The note in suit is as follows:—

"$2000.00            Winslow, Arizona, April 23rd, 1908.

"Nine months after date, for value received, waiving grace and protest, I, we or either of us, jointly and severally, promise to pay to the order of the Navajo County Bank of Winslow, Arizona, two thousand dollars with interest at the rate of 10 per cent per annum from date until paid, principal and interest payable in U. S. gold coin, with ten cent additional on amount unpaid if placed in the hands of an attorney for collection.   We agree that after maturity this note may be extended from time to time by any one or more of us without the knowledge or consent of any of the others of us, and after such extension the liability of all parties shall remain as if no such extension had been made.   We hereby expressly waive all homestead and exemption laws and rights thereunder.

Interest payable monthly in advance.   Payable at the Navajo
County Bank, Winslow, Arizona.                          .   ..

"The White Mountain Health Resort,

"By GEO. P. SAMPSON, Pres.

"Attest: W. C. KIRKER, Sec'y."

This note was written at Winslow, Arizona, and there signed
by Geo. P. Sampson, the president of the maker, as follows:
"The White Mountain Health Resort, By Geo. P. Sampson,
Pres." It was then sent to the defendants, at Los Angeles,
California, and they there indorsed the same by signing their
names in blank upon the back. It was then sent by the in-
dorsers by mail from Los Angeles, addressed to W. C. Kirker,
the secretary of the corporation maker, at some place in the
state of Kentucky. W. C. Kirker there attested the note "At-
test: W. C. Kirker, Sec'y.," and then mailed it, addressed to
plaintiff at Winslow, Arizona. It was stipulated that the note
was signed by the defendants and all of the parties to it
"before it was delivered to the bank." The note fully signed
was received by plaintiff at Winslow, Arizona, and accepted
by it, and plaintiff thereupon paid the consideration therefor
to the corporation maker at that place. There was nothing
in the evidence to indicate that anything done in reference
to the note prior to the time it was received by plaintiff at
Winslow, Arizona, fully signed, was done by direction or au-
thority of plaintiff. So far as appears from the record, plain-
tiff was an absolute stranger to the whole transaction at all
times prior to the receipt of the note fully signed, at Winslow,
Arizona, whereupon it there accepted it and made the loan.

It cannot be doubted that if the note was a negotiable in-
strument the defendants were mere indorsers, with no other
liability than that of indorsers. As such, notice of dishonor
or nonpayment would be essential to their liability in the ab-
sence of waiver on their part of the right to such notice, an
element not present in this case. This is true whether the
case is governed by the law of Arizona (which as far as appli-
cable is set forth in the findings of the trial court), or by the
law of California, or by the law of Kentucky, as to which
there is no evidence and which consequently must be presumed
to be the same as the law of California. Both by the law of
Arizona and California, one placing his signature upon a
negotiable instrument otherwise than as maker, drawer or ac-

ceptor, is deemed to be an indorser, unless he indicates by appropriate words his intention to be bound in some other capacity.    (Rev. Stats. Ariz., sec. 3366; Civ. Code, Cal., sec. 3108.)    And it has been specially provided in both jurisdictions, owing to the divergence of authority as to the character of one indorsing prior to the original delivery of a note or bill (whether indorser, maker, surety or guarantor), that where a person not otherwise a party to an instrument places thereon his signature in blank before delivery to the payee, he is liable as *indorser* (Rev. Stats. Ariz., sec. 3367; Civ. Code, Cal., sec. 3117) in the absence, of course, of words indicating his intention to be bound in some other capacity.    There is absolutely nothing in the California law that dispenses with the necessity of notice of nonpayment to such an indorser of a negotiable instrument (see *O'Connor* v. *Clarke* (Cal.), 44 Pac. 482; *Fessenden* v. *Summers*, 62 Cal. 484), and we see no force in the claim of appellant that the Arizona law differs from our law in that regard.    The subdivisions of the Arizona section relied on by appellant in this regard simply specify in terms the persons in whose favor the indorser's liability runs, and the liability of every indorser without qualification is declared in section 3369 of the Revised Statutes.    He agrees to pay only if the instrument be dishonored and the necessary proceedings on dishonor be taken, and if notice of dishonor is not given him, he is discharged.    (Rev. Stats. Ariz., sec. 3392.)

Whether or not the note involved here was a negotiable instrument must be determined by the law of the place where the contract between the parties was made.    (1 Daniels on Negotiable Instruments, sec. 367.)    Ordinarily the place where a contract is made depends not upon the place where it is written, signed, or dated, but upon the place where it is delivered as consummating the bargain.    (Id., sec. 868.)    The learned judge of the trial court was of the opinion that this place was Winslow, Arizona, and that the contract was an Arizona contract.    He found from the evidence, as we have detailed it, that the secretary (Mr. Kirker) mailed the note in Kentucky to plaintiff at Winslow, Arizona, *"for negotiation,"* that the plaintiff received it at said Winslow, and "accepted said note so indorsed *at its banking rooms in said city of Winslow,"* and then and there advanced the principal sum

to the maker.    Undoubtedly there are many cases holding substantially that the deposit by one party in the mails of an instrument properly addressed to the other party, with postage thereon prepaid, constitutes a delivery to the other party, at the place where and the time when it is so deposited.    But clearly this cannot be the case unless the deposit in the mail was under such circumstances that the carrier can reasonably be considered the agent of the party to whom the instrument is addressed, rather than purely the agent of the other party. We can see no ground for doubting the correctness of the conclusion of the learned trial judge upon the evidence before him that Kirker sent this note from Kentucky to plaintiff at Winslow for negotiation and acceptance at the *latter place,* that the carrier in transporting the instrument was in no sense the agent of plaintiff, and that there was no contract between plaintiff and any of the other parties until *it received and accepted the note at Winslow,* Arizona, and consented to make the loan.    As we have said, so far as appears, plaintiff was an absolute stranger to the whole transaction up to the time it received the note through the mail.    The presumption afforded by the note itself, dated and expressly made payable at Winslow, Arizona, that it was given and accepted in Arizona, was certainly not so overcome by the facts shown by parol evidence as to require a contrary conclusion at the hands of the trial court.    There is nothing in *Ivey* v. *Kern City Land Co.,* 115 Cal. 196, [46 Pac. 929], opposed to our conclusion.    We are in no way concerned here with the rule there discussed to the effect that when a letter is deposited in the mail properly addressed to the proposer, unconditionally accepting a proposal theretofore made, the contract is complete.    Under the conclusion of the trial court, which is sufficiently supported by the evidence, the deposit in the mail in Kentucky by Secretary Kirker was the deposit of a mere offer or proposition to plaintiff, and the place where the proposition was received, accepted, and acted upon by plaintiff was, to use the language of the opinion in the case last referred to, ''the place where the last act is performed which is necessary to render the contract obligatory.''    *Loud* v. *Collins,* 12 Cal. App. 786, 789, 790, [108 Pac. 880], also relied upon by appellant, is easily distinguishable from the case at bar.    There was ample evidence in that case to support a conclusion that the deposit of the note in the United States post-office at Chicago by Alder-

son was an *acceptance* of a proposition theretofore made to him by the payee, which completed the contract.

We are satisfied that the note must be held to have been a negotiable instrument under the law of Arizona. Under express provision of the statutes the negotiable character of an instrument otherwise negotiable is not affected by a provision which waives the benefit of any law intended for the advantage or protection of the obligor (Rev. Stats., sec. 3308), and the sum payable is a sum certain within the meaning of the law defining negotiable instruments, although it is to be paid "with costs of collection or an attorney's fee in case payment shall not be made at maturity." (Rev. Stats., sec. 3305.) Clearly neither of these provisions can be held to have been affected by the enactment in the year 1905 of a new section defining a negotiable promissory note as "an unconditional promise in writing made by one person to another, signed by the maker, engaging to pay on demand or at a fixed or determinable future time, a sum certain in money to order or to bearer." (Rev. Stats., sec. 3847.) This was practically but a re-enactment as to promissory notes, in more concise phraseology, of the old section defining negotiable instruments (Rev. Stats., sec. 3304). There is no warrant for holding that it was intended to repeal such other provisions as those defining the term "a sum certain in money," or the provision for waiver of exemption. The only other provision which is claimed to affect the negotiable character of the note is that declaring, "We agree that after maturity this note may be extended from time to time by any one or more of us without the knowledge or consent of any of the others of us, and after such extension the liability of all parties shall remain as if no such extension has been made." The point made by appellant is that this provision makes the time of payment uncertain and unascertainable from anything stated on the face of the note, the statute requiring, as we have seen, that the promise to pay must be "on demand or at a fixed or determinable future time." When it is said that the time of payment must be stated with certainty, the time referred to is that when the holder can insist on payment. Therefore, if the time when the holder has the absolute right to demand payment is prescribed with certainty, the note is negotiable so far as this objection is concerned. (See *National Bank etc.* v. *Kenny,* 98 Tex. 293, [83 S. W. 268] ; *Missouri etc. Co.* v. *Long,* 31 Okla.

1, [120 Pac. 291]; *Cunningham* v. *McDonald,* 98 Tex. 316, [83 S. W. 372]; *First Nat'l. Bank* v. *Buttery,* 17 N. D. 326, [17 Ann. Cas. 52, 16 L. R. A. (N. S.) 878, 116 N. W. 341].) There is nothing uncertain in this note about the date of maturity. The provision refers only to something that may be done by the maker, if the holder agrees thereto, *"after maturity."* Clearly the provision referred to is in no way binding upon the holder of the note. No one can reasonably claim that the effect thereof is to give the maker the right to extend the time of payment, without the consent of the holder. The note was dated April 23, 1908, and by its terms, unaffected by anything in the provision referred to, was to mature "nine months after date," at which time the holder, so far as anything contained therein is concerned, had the absolute right to insist on payment. There was no provision under which the time so specified could be changed, or the right of the holder to insist on payment at such time be held to be affected. Where the time is thus definitely and irrevocably fixed at which the note shall mature and the holder shall be at liberty to compel payment, we are unable to see how a provision looking to a possible agreement between the parties, after maturity, for an extension, renders the executed note at all indefinite or uncertain as to the time when it is payable. The reasoning of the authorities already cited fully supports our conclusion on this point. Most, if not all, of the cases cited by appellant on this point are distinguishable by reason of the nature of the provision held to render the instrument uncertain and indefinite as to the time of payment.

It is to be noted that there does not appear to be contained in the Arizona law any provision similar to our section 3093 of the Civil Code, declaring that a negotiable instrument must not contain any other contract than such as is specified in the article relating to such instruments.

We are forced to conclude upon the record that the note here involved was a negotiable instrument, that the defendants were mere indorsers thereon, and that they were relieved from liability on account thereof by the failure of plaintiff to give them notice of its dishonor and nonpayment.

The judgment is affirmed.

Shaw, J., Sloss, J., and Lorigan, J., concurred.