[No. 7108.]

## LONGMONT NATIONAL BANK v. LOUKONEN.

1. PROMISSORY NOTE—*Effect of Clause Consenting to Extension* —A promissory note, certain as to the payee, amount, and day of payment, bore, subjoined, a clause in these words, "The makers and endorsers hereof agree to any extension of time of payment." *Held*, to import merely that if the maker and payee should agree to an extension of the time of payment, the endorser should not be discharged; that it neither conferred upon the maker the right to demand an extension, nor imposed upon the payee or holder any duty to grant one; and that it did not destroy the negotiable character of the paper.

*Error to Boulder District Court.*—Hon. HARRY P. GAMBLE, Judge.

Mr. GEO. Q. RICHMOND and Mr. GRANT E. HALDERMAN, for plaintiff in error.

Mr. HENRY J. O'BRYAN, for defendant in error.

Mr. JUSTICE BAILEY delivered the opinion of the court:

Claiming to have purchased it for value before maturity, in due course of business, The Longmont National Bank bought this action against William Loukonen, the maker, to recover the amount due on the following promissory note:

"$700.00.            Longmont, Colo., Oct. 28, 1908.

One year after date, for value received, we or either of us, jointly and severally, promise to pay to B. F. Bonnewell, or order, the sum of seven hundred and no-100 dollars, at the Central National Bank, Denver, Colo., with interest at the rate of six per centum per annum until paid. Interest payable annually.

And a failure to pay any of said interest when due shall cause the whole note to become due and collectible at once, or the interest ot be counted as principal, at the option of the holder of the note. The makers and endorsers hereof hereby severally waive presentment for payment, protest, notice of

non-payment and of protest, and agree to any extensions of time of payment and partial payments before, at or after maturity. If this note is not paid when due I agree to pay all reasonable costs of collection, including attorney's fees, and also waive all exemptions in case of suit on this note.

WM. LOUKONEN."

The answer alleges lack of consideration; fraud in securing the execution and delivery of the note; that plaintiff is not a *bona fide* holder; and that the instrument, by its terms, is non-negotiable, therefore subject to all defenses, in the hands of the bank, which might be properly urged against it in an action by the original payee. The replication avers that the note is negotiable, and that plaintiff is a holder for value before maturity, without notice of any of the alleged infirmaties in the paper.

Trial was to the court by agreement without a jury. The plaintiff, to support the allegations of its complaint, introduced the note duly indorsed. The defendant thereupon offered proof to support his allegations of failure of consideration, and of fraud in procuring its execution and delivery, which was admitted over objections of immateriality, irrelevancy and incompetency. To this showing the plaintiff offered no rebuttal evidence. The court held the note non-negotiable; and found that its execution and delivery were procured through fraud and without consideration. There was no attempt to show that the bank had actual notice of any matter offered in proof under the special defenses. A judgment of dismissal was entered, which plaintiff brings here for review.

The sole question is: Does a clause in a promissory note, otherwise clearly negotiable, wherein the makers and indorsers consent to any extensions of time of payment and partial payments before, at or after maturity, render the time of payment indefinite and uncertain, and thus make it non-negotiable, because in conflict with the provisions of the negotiable instrument act, that time of payment must be on demand, or at a fixed or determinable future time? If the instrument is non-

negotiable the judgment is right and should be affirmed; if negotiable, the judgment is wrong and must be reversed.

In the recent case of *First National Bank v. Buttery,* 16 L. R. A. New Ser. (N. D.) 878, construing a provision essentially like the one under consideration, it was said:

"This provision seems to us to have been inserted to protect the holder against any release of indorsers or others, by an extension without their assent, and the word 'makers' is evidently included to prevent any misunderstanding or misconstruction of the contract or failure to distinguish between makers, indorsers, sureties, and any other parties who might be or become liable thereon under certain contingencies as makers. 7 Cyc. 614. This phrase does not express an agreement to extend time, but leaves the matter of extension optional with the holder and not obligatory upon him, and the note on its face fixes the time when it becomes due. In this respect it must be distinguished from a provision to the effect that the time of payment shall be extended indefinitely, in which case the uncertainty of the time renders the instrument non-negotiable."

The provision under consideration does not mean that the holder can arbitrarily extend the time of payment of the note as he may see fit, over objection by the maker, nor can the latter make an extension without the consent of the holder. In *National Bank v. Kenney,* 98 Tex. 293, 300, the supreme court, dissenting from the view taken in that case by the court of civil appeals, involving the construction of a provision practically like the one here considered, said:

"If as is argued the effect of the stipulation is to give the right to the maker without the consent of the holder, or to the holder without the consent of the maker, to appoint another day of payment and thereby extend the time, it may be, that it would render the instrument not negotiable. But we do not think it capable of that construction. It does not say that either the holder or the maker may extend the note. It merely makes a provision in case the time of payment may be ex-

tended. How extended? It seems to us the extension meant is that which takes place when the debtor and creditor make an agreement upon a valuable consideration for the payment of the debt on some day subsequent to that previously stipulated. The obvious purpose of the provision taken as a whole was merely to relieve the holder of the paper from the burdens made necessary by the rigid requirements of the mercantile law in order to secure the continued liability of the indorsers and sureties upon the paper. Therefore what was meant by the stipulation as to the extension of time was simply that in case the holder and the maker should agree upon an extension, the sureties and indorsers should not be discharged. The holder and maker of any note may at any time agree upon an extension; therefore the fact that they may have that right does not affect the negotiability of the paper. It is usually said that in order to make an instrument negotiable under the law merchant, the time of payment must be certain. But a note payable 'on or before' a certain date is negotiable. The maker of such a note has the right to pay before the day named, but the holder can not demand payment before that day. So in that case, the time at which the maker may elect to pay is uncertain, but the time at which the holder may demand payment is certain. It follows that if the holder has the absolute right to demand payment at a certain date, the note is negotiable. This is but an illustration of what we understand to be the general rule. There being nothing in the stipulation under consideration which gave any one the right to demand of the holder of the note an extension of the time of payment, we think the time at which he could demand payment was fixed and that therefore it was a negotiable note."

The time of payment of this note, by its express terms, is certain. A definite time when the holder may demand payment is stated, and the period of maturity is fixed. There is nothing in the note which gives the maker, or any one else, a right to demand an extension, or which binds the holder to give it. We are unable to perceive how the mere fact that

the signers and indorsers undertake to be bound by any extension of time of payment, which may thereafter be settled upon, takes from an instrument, in all other respects commercial paper, its negotiable character. Any agreement for an extension, not appearing in the instrument, and unknown to a purchaser for value before maturity, would not defeat his right to demand payment of the note according to its original terms. It is clear from the note as written that the maker promises to pay the holder a certain sum of money at a definite future time, and that is all which, in this respect, is required to make the paper negotiable. The sole purpose of the stipulation is for the protection of the holder, by continuing the liability of both maker and indorser in case of extension. The relations to the paper of the maker and indorser are unchanged, and their rights respecting it are not enlarged. The maker's obligation is primary and can in no event be extended or abridged by contingencies; and therefore the fact that he consents to an extension, in no way alters the negotiable character of the instrument itself, for the holder, being under no obligation to extend, may, at his option, demand payment at the time the paper is due, by its express terms, which is fixed and certain. A legal right exists in the maker and holder of any negotiable instrument to agree to an extension, and the fact that such legal right exists does not make the paper non-negotiable; no more should the fact that the maker's consent to an extension, which he always has the legal right to give, is expressed in the note, but which does not in fact constitute an extension, have such effect. To hold that an undisclosed agreement to extend destroys the obligation to pay a note according to its terms, thus making the time of payment uncertain, in the hands of a *bona fide* holder for value before maturity, would be contrary to every principle of justice and fair dealing. Such would be the effect of declaring this instrument non-negotiable. So, notwithstanding the provision in question, we think that the time of payment is fixed and certain; that the note is negotiable; and that the court erred in holding otherwise.

There is conflict of authority upon the question involved, but the views herein expressed seem to be the sounder in reason, more in accord with good conscience, and have the support of the following well considered cases: *Jacobs v. Gibson,* 77 Mo. App. 244; *City National Bank v. Goodloe-McClelland Com. Co.,* 93 Mo. App. 123; *First National Bank v. Buttery, supra; Farmer, T. & H. v. Bank,* 130 Iowa 469; *National Bank v. Kenney, supra;* and *Missouri-Lincoln Trust Co. v. Long,* 120 Pacific (Oklahoma) 291.

The judgment is reversed and the cause remanded for further proceedings in conformity with the views here expressed. *Reversed and Remanded.*

Mr. JUSTICE GABBERT and Mr. JUSTICE WHITE concur.