## IOWA STATE SAVINGS BANK v. WIGNALL *et al.*

No. 4215.  Opinion Filed February 8, 1916.

Rehearing Denied May 23, 1916.

(157 Pac. 725.)

1.  **BILLS AND NOTES—Negotiability—Provision of Note.** A promissory note bearing date September 18, 1908, given and payable in this state, and otherwise negotiable, is not rendered non-negotiable by the provision, a part thereof: "We, the makers, sureties, guarantors of this note, hereby severally waive presentment for payment, notice of nonpayment, protest and notice of protest and diligence of bringing suit against any party thereto and consent that time of payment may be extended without notice thereof to any of the sureties of this note," where all of the makers are principals.

2.  **SAME.** There being neither sureties, indorsers, nor guarantors, such provision does not apply to any party signing the note; and there being no person or persons to whom the provision applies, the presence of the clause does not render the note non-negotiable.

(Syllabus by the Court.)

*Error from District Court, Garvin County;*
*R. McMillan, Judge.*

Action by the Iowa State Savings Bank against Fred Wignall and others. From the judgment, plaintiff brings error. Reversed and remanded for new trial.

*Thompson & Patterson,* for plaintiff in error.

*Blanton & Andrews,* for defendants in error.

SHARP, J.  The only question necessary to a decision in this case is whether the notes sued on, each bearing date September 18, 1908, executed and payable at Maysville, Okla., are negotiable. That part of the notes which it is said is destructive of their negotiability is as follows:

"We, the makers, sureties, indorsers, guarantors of this note, hereby severally waive presentment for payment, notice of nonpayment, protest and notice of protest and diligence of bringing suit against any party thereto and consent that time of payment may be extended without notice thereof to any of the sureties of this note."

In general terms, a promissory note may be defined to be a written promise by one person to pay to another person therein named, or order, a fixed sum of money, at all events, at a time specified therein, or at a time which must certainly arrive. The jurisprudence which regulates promissory notes and bills of exchange is founded upon and embodies the usages of merchants in different commercial countries. This custom of merchants or *lex mercatoria* grew out of the necessity and convenience of business, and, although different from the general rules of the common law, it was ingrafted into it, and became a part of it. Like all other substantive law, this system has been the creature of growth. Founded on the custom and usage of merchants, it is today the combined result of reason and experience, slowly modified by the necessities and changes in commercial affairs. It has been, and is in force in the states of the Union, except as modified by statutes. The rights and liabilities of parties to negotiable instruments, where not affected by statutes, are to be determined in accordance with this commercial law. Established as it has been by ancient usage, the *lex mercatoria* is frequently arbitrary and not deducible from logical considerations.

At the time of the execution of the notes, a negotiable instrument was defined by section 3592, Wilson's Rev. & Ann. Stat. 1903, as follows:

"A negotiable instrument is a written promise to [or] request for the payment of a certain sum of money, to order or bearer."

Other sections of the statutes provide: Section 3593, that a negotiable instrument must be payable in money only and without any condition not certain of fulfillment; section 3594, that the person to whose order a negotiable instrument is made payable must be ascertainable at the time the instrument is made; section 3595, that a negotiable instrument may give to the payee an option between the payment of the sum specified therein and the performance of another act, but as to the latter the instrument is not within the provision of article 1, chapter 54, of the statutes; section 3596, that a negotiable instrument may be with or without date, and with or without designation of the time and place of payment; section 3597, a negotiable instrument may contain a collateral pledge of security, with authority to dispose thereof; while by section 3598 it is provided that a negotiable instrument must not contain any other contract than such as is specified in article 1. Other sections fixing the time when and the place where notes of a certain character are payable, as well as various provisions respecting indorsement, demand, presentment, dishonor, waiver of presentment, and notice of dishonor, may be found in the statutes, while section 3600 divides negotiable instruments into six classes, of which promissory notes constitute one class.

It is said by the defendants in error that the notes sued on are in contravention of the statute; hence they are nonnegotiable. This is the material inquiry presented. In *Missouri-Lincoln Trust Co. v. Long*, 31 Okla.

1, 120 Pac. 291, the note on which suit was brought contained the provision:

"The makers of this note hereby severally waive presentment for payment, notice of nonpayment, protest, and consent that time for payment may be extended without notice thereof."

It was observed by the court in the opinion that the form of the note there involved was a little out of the ordinary, in that the waiver and consent clause had relation to the makers of the note, whereas it was usually inserted for the purpose of extending the liability of sureties, guarantors, or indorsers. It was said:

"That the maker consents to the extension of the time of payment in no wise affects the legal rights of the holder of the paper; they are clear and certain. The note falls due at a time fixed, and the holder is at liberty to collect it at that time, or resort to any proper legal remedy he sees fit for that purpose. In the United States, if the time must certainly come, although the particular date is not mentioned in the note, it is regarded as negotiable, as the fact of payment is then certain."

The note in that case was made in the Indian Territory, and payable November 1, 1907, and was therefore not controlled by the Oklahoma statute. In *De Groat v. Focht*, 37 Okla. 267, 131 Pac. 172, the clause in the note provided:

"The indorsers, guarantors, and assignors, severally waive presentment for payment, protest and notice of protest thereof, for nonpayment of this note, and consent that the time of payment may be extended without notice."

And it was held that the provision named did not render the note nonnegotiable, and the rule announced by the court in *Missouri-Lincoln Trust Co. v. Long, supra*,

was adhered to. In that case the note was given May 11, 1910, and hence was controlled by the present negotiable instruments statute of June, 1909. Authorities supporting the rule announced in *Missouri-Lincoln Trust Co. v. Long* are *First Nat. Bank of Pomeroy v. Buttery,* 17 N. D. 326, 116 N. W. 341, 16 L. R. A. (N. S.) 878, 17 Ann. Cas. 52; *National Bank of Commerce v. Kenney,* 98 Tex. 293, 83 S. W. 368; *Stitzel v. Miller,* 250 Ill. 72, 95 N. E. 53, 34 L. R. A. (N. S.) 1004, Ann. Cas. 1912B, 412; *Farmer et al. v. Bank of Graettinger,* 130 Iowa, 469, 107 N. W. 170; *Navajo County Bank v. Dolson,* 163 Cal. 485, 126 Pac. 153, 41 L. R. A. (N. S.) 787; *Longmont Nat. Bank v. Loukonen,* 53 Colo. 489, 127 Pac. 947, Ann. Cas. 1914B, 208; *City Nat. Bank v. Commission Co.,* 93 Mo. App. 123; *Anniston Loan & Trust Co. v. Stickney,* 108 Ala. 146, 19 South. 63, 31 L. R. A. 234.

It has been said that a negotiable note is a "courier without luggage, whose countenance is its passport." 3 R. C. L. p. 866. But we are not to understand thereby that the incorporation into an instrument, which contains an unconditional promise to pay a definite sum of money, of additional stipulations alone necessarily deprives the instrument of the character of a promissory note. *Cherry v. Sprague,* 187 Mass. 113, 72 N. E. 456, 67 L. R. A. 33, 105 Am. St. Rep. 381. And many provisions may be added to those deemed essential, without affecting the negotiability of the instrument. *Kirk v. Dodge County Mut. Ins. Co.,* 39 Wis. 138, 20 Am. Rep. 39; 3 R. C. L. 919. The notes in question matured September 18, 1909, September 18, 1910, and September 18, 1911, respectively; were payable to H. A. Riggs & Son, in the sum of $800 each; bore interest from date at the rate of 8 per cent. per annum; were payable annually at the First National

Bank of Maysville, Okla.; and, unless on account of the proviso, met the requirements of the statute respecting negotiable promissory notes. Each obligor was a principal. This is admitted in the joint answer of the defendants. There being no sureties, indorsers, or guarantors on the notes, the question of the rights of those bearing that relation is not involved. The obvious purpose of the provision concerning waiver and consent was to relieve the holder of the notes from the burden made necessary by the rigid requirements of the law merchant, in order to secure the continued liability of the indorsers. sureties, and guarantors. *National Bank of Commerce v. Kenney,* 98 Tex. 293, 83 S. W. 368; *Farmer et al. v. Bank of Graettinger,* 130 Iowa, 469, 107 N. W. 170. All of the makers being principals, each was primarily obligated to the payee or indorsee of the note, as well as *inter sese.* There being no sureties, guarantors, or indorsers, the case is not unlike that before the court in *Missouri-Lincoln Trust Co. v. Long, supra.* Useless and unnecessary provisions, which impose no additional burdens, and do not add to, change, or affect the liability or rights of the parties, will not of themselves be permitted to convert an otherwise negotiable note into one that is non-negotiable. Obviously the provisions with respect to waiver and consent were intended for, and should be construed to include, those whose relations entitled them to the rights of those secondarily, as distinguished from those primarily, liable. There being among the obligors none who were secondarily liable, the provision with reference to waiver and consent was without field for operation, and without effect upon the negotiability of the note. Nor is there anything in the statutes requiring that we should conclude otherwise. A very similar case is that of

*Smith v. Nelson Land & Cattle Co.,* 212 Fed. 56, 128 C.
C. A. 512. There the provision in the notes which it
was claimed rendered them nonnegotiable was the fol-
lowing:

"The makers, indorsers and guarantors of this note
hereby severally waive presentment of payment, notice of
nonpayment, protest and notice of protest, and diligence
in bringing suit against any party hereto, and sureties
consent that time of payment may be extended without
notice thereof"

—which, it will be seen, is remarkably like that in the
notes in the case at bar. After quoting from section 5254,
Gen. Stats. of Kansas 1909, relative to the contents of
negotiable instruments, it was said that the only lan-
guage in the notes which could be claimed to violate the
statute, was the provision, "and sureties consent that time
of payment may be extended without notice thereof."
Passing upon this provision, the court said:

"The time of payment of any promissory note may
be extended, and no one has ever thought of urging that
fact to destroy its negotiability. So the contention must
come to this: That it is the extension without the con-
sent of a party to the note which would make the time
of payment as to him uncertain. If, however, there are
no parties to the notes whose consent is not required be-
fore the time of payment may be extended, then the clause
waiving such consent as to the parties not signing the
notes cannot affect the time of payment, and we are of the
opinion that the present is such a case. In other words,
we are of the opinion that the language hereinbefore
quoted could not, in law, have applied to any party sign-
ing the note, and that therefore it did not operate in any
way to render the time of payment of the note uncertain."

The effect of the opinion, as appears from the sylla-
bus, was to hold that no sureties having signed the notes,

and there being no persons to whom the provisions applied, the presence of the clause did not render the notes nonnegotiable.

From the rulings made on objection to defendants' testimony, as well as from the court's instructions to the jury, it is clear that the trial court entertained the view that the notes were nonnegotiable.

This was error, for which the judgment of the trial court is reversed, and the cause remanded for a new trial.

All the Justices concur.