H. M. TOWNSEND, Appellant, v. W. E. ADAMS et al., Appellees.

JANUARY 8, 1929.

*Harry Wifvat,* for appellant.

*Wilson & Harris* and *Howard & Sayers,* for appellees.

KINDIG, J.—The negotiability or nonnegotiability of a note is the only question presented for determination. In words and figures, that instrument is as follows:

"$2000.00　　　　　　　Jamaica, Iowa, Mch. 1, 1920.

"On the 1st day of March, 1925, for value received we promise to pay to the order of F. E. Smith, at the Peoples Trust & Savings Bank of Perry, Iowa, two thousand and no/100 dollars with six per cent interest from Mch. 1st, 1920, interest payable annually and interest and principal to draw eight per cent after becoming due, *and we consent and agree that after this obligation shall become due the time of payment thereof may be extended from time to time by any one or more of us, and in case of such extension and notwithstanding the same, we shall and will continue liable thereon as if no such extension had been so made* [the italics are ours], we agree that if action should be brought for the collection of this note, a reasonable amount shall be allowed as attorney's fees and taxed with costs in case. If this note is left with the justice of the peace or other collector for collection, we agree to pay cost of same. And the endorsers and guarantors waive presentment, protest and notice thereof, and all parties hereto consent and agree that a justice of the peace may have jurisdiction on this note to the payment of three hundred dollars."

This document was signed by defendants-appellees on the first day of March, 1920, and on that date delivered to F. E. Smith, the payee named therein. Afterwards, but before ma-  turity, said paper was transferred, through indorsement and delivery, by Smith to the Peoples Trust & Savings Bank. That transferee, then, before maturity, again indorsed and delivered the note to plaintiff-appellant. By its terms, the written obligation provided for payment on March 1, 1925.

Appellant brought suit thereon November 13, 1926, claiming

to be a holder in due course for a valuable consideration, without notice of any outstanding defenses to which the same was subject. As an answer to such cause of action, appellees, as defendants, contend that the instrument is nonnegotiable, and therefore subject to their claim that, in March, 1925, they executed, made payable, and delivered to the Peoples Trust & Savings Bank aforesaid a new note for $6,000 in full payment of the one in controversy.

If the instrument on which suit is brought is negotiable, appellees' defense must fail; if, on the other hand, the note is nonnegotiable, it may prevail. Appellees predicate nonnegotiability upon that part of the above-named note which reads to this effect:

"And we consent and agree that after this obligation shall become due the time of payment thereof may be extended from time to time by any one or more of us, and in case of such extension and notwithstanding the same, we shall and will continue liable thereon as if no such extension had been so made."

Does that language produce nonnegotiability? We think not.

I. Statutes in effect at that time contained the following provisions: Supplement 1913, Section 3060-a1 (Section 9461, 1924 Code):

"An instrument to be negotiable must conform to the following requirements: * * *

"3. Must be payable on demand or at a fixed or determinable future time. * * *"

"Determinable future time," according to Section 3060-a4 of the same Supplement (Section 9464, Code of 1924), includes: "* * * On or before a fixed or determinable future time specified [in the note]. * * *" Regarding this, the instrument in the case at bar embodies the succeeding phraseology: "On the 1st day of March, 1925, for value received, we promise to pay to the order of F. E. Smith," etc. Such "future time" is thereby definitely and determinably fixed. So, unless subsequent words or phrases contained in the instrument nullify that result, negotiability is established.

II. It is said, however, that the specific provision for ex-

tension above quoted does nullify and overcome the otherwise "fixed and determinable" future date for maturity, because, it is asserted, the permissive extension makes uncertain when payment can be made or demanded.

Well may the theory thus be formulated, for therein the criterion is to be found. Solution for this problem will have been discovered when it is determined on which side of that demarcation line is the language of this particular note. Those words authorizing the extension must be such in their meaning as to make it impossible either, first, for the makers or other obligors to pay on March 1, 1925, or, second, for the holder to require payment at maturity. Hence, if on that date payment can be made by the maker or obligor, on the one hand, and, on the other, required by the holder, without an intervening extension, then certainty exists concerning the "fixed or determinable future time." *Navajo County Bank v. Dolson,* 163 Cal. 485 (126 Pac. 153) ; *Stitzel v. Miller,* 250 Ill. 72 (95 N. E. 53). See, also, *First Nat. Bank v. Stover,* 21 N. M. 453 (155 Pac. 905) ; *Longmont Nat. Bank v. Loukonen,* 53 Colo. 489 (127 Pac. 947) ; *First Nat. Bank v. Buttery,* 17 N. D. 326 (116 N. W. 341).

III. What, then, is meant by the stipulation for the extension, so far as it controls the maker's or obligor's right to satisfy the debt on March 1, 1925? At this juncture, some light is thrown upon the subject by the rule in this state to so interpret as to bring about negotiability, if possible. Apt language in *Williamson v. Craig,* 204 Iowa 555, is:

"Since the adoption of the Uniform Negotiable Instrument Law, and since negotiable instruments have taken such a prominent part in the business of the commercial world, the tendency of the courts is to hold instruments negotiable where they can reasonably be so held. It is apparent from the citation of authorities [in the *Williamson* case] above that this is the drift of the modern holdings."

Within the bounds of reason, then, liberality of construction must be exercised in favor of negotiability. Consequently, it is to be found in the instant case that the maker or other debtor could pay the note and bring its existence to an end if reasonable construction will permit.

IV. To elucidate here, it is recognized that in this state an agreement permitting the holder to arbitrarily extend the time of payment before maturity, results in nonnegotiability. Precedents to that effect may be found in *Cedar Rapids Nat. Bank v. Weber*, 180 Iowa 966; *Quinn v. Bane*, 182 Iowa 843; *Farmers Nat. Bank v. Stanton*, 191 Iowa 433; *Security Sav. Bank v. Capp*, 193 Iowa 278; *First Nat. Bank v. McCartan*, 206 Iowa 1036.

Other state courts have reached a similar conclusion. *Sykes v. Citizens' Nat. Bank*, 69 Kan. 134 (76 Pac. 393); *Wayne County Nat. Bank v. Cook*, 73 Ind. App. 404 (127 N. E. 773); *Union Stock Yards Nat. Bank v. Bolan*, 14 Ida. 87 (93 Pac. 508); *Sanderson v. Clark*, 33 Ida. 359 (194 Pac. 472); *City Nat. Bank v. Gunter Bros.*, 67 Kan. 227 (72 Pac. 842); *Rossville State Bank v. Heslet*, 84 Kan. 315 (113 Pac. 1052); *Central Nat. Bank v. Engler*, 112 Kan. 708 (212 Pac. 656). See, also, *National Bank v. Dickinson*, 102 Kan. 564 (171 Pac. 636).

While some courts have held to the contrary. *De Groat v. Focht*, 37 Okla. 267 (131 Pac. 172); *First Nat. Bank v. Baldwin*, 100 Neb. 25 (158 N. W. 371); *Russell v. Wyant*, 214 Mo. App. 377 (253 S. W. 790); *Iowa State Sav. Bank v. Wignall*, 53 Okla. 641 (157 Pac. 725).

Again, it has been further determined that, if the instrument can be extended, rather than paid at maturity, nonnegotiability results. *Citizens Nat. Bank v. Piollet*, 126 Pa. St. 194 (17 Atl. 603). Nowhere has there been called to our attention any decision to the effect that an instrument becomes nonnegotiable when it can be paid at maturity, even though thereafter the time may be extended. With reference to this subject-matter, it will be found that many of the cases above cited discussed notes containing the words "before" or "after" maturity, but in each instance it was the word "before" that ruined the negotiability. Also, some of these adjudications involved a note embodying language which permitted an extension of time on the very day of payment, rather than the liquidation of the obligation itself. Each case where nonnegotiability appears, then, seems to have been controlled in that respect because the time of payment was not fixed or determinable, but at all instances remained uncertain, due to the fact that the maker or

obligor might not be able to discharge the debt on the day payable.

V. On which side of this line of demarcation is the present written undertaking?

Section 3060-a85 of the 1913 Supplement (Section 9546 of 1924 Code) provides: "Every negotiable instrument is payable at the time fixed therein without grace. * * *"

According to its terms, the note in question could be paid on the first day of March, 1925. But there is added to the ordinary language thereof the following clause: "And we consent and agree that after this obligation shall become due, the time of payment may be extended." Connected as it is with the context, does "after this obligation shall become due" mean at the moment payable, or at a future time when there is default therein? "Due" has been variously defined, depending always upon its association with other language, as well as the apparent manner in which it was used to express the intention of the parties. Generally, it is said to mean "when the time arrives in which payment is enforcible." *District Township of Jasper v. District Township of Sheridan,* 47 Iowa 183; *Ryan & Walsh v. Douglas County,* 47 Neb. 9 (66 N. W. 30); *Jaqua v. Shewalter,* 10 Ind. App. 234 (37 N. E. 1072); *Yocum v. Allen,* 58 Ohio St. 280 (50 N. E. 909).

Manifestly, the makers of the note were not required to discharge it at any particular minute or hour of the day it was payable. During that time, it was enough if they met the obligation within the legal "day," as fixed by the Negotiable Instruments Law. Suit could not be brought against them for nonpayment because they did not discharge the debt in the forenoon, but waited until the afternoon so to do. Clearly, this is true unless demand was made and refused at some time "during the day." Whether or not refusal to pay at that moment in the day would make a cause of action on the instrument matured, we do not here decide, because the point is not presented. Nevertheless, the makers of the note had at least the entire legal day, or that portion thereof up to the time such demand was actually made, in which to satisfy the obligation. 8 Corpus Juris 402, expresses the thought in this language:

"* * * the day of payment or maturity is included as the last day of the currency of the paper. The maker or the ac-

ceptor has the whole of that day in which to make payment; and in most jurisdictions, therefore, it is held that an action cannot be brought, even after demand and refusal to pay, until the day following, or, where grace is allowed, until the day following the last day of grace. In some jurisdictions, however, it is held that paper is due on demand at any reasonable time on the day of maturity, and that an action therefor may be maintained on that day after a demand and refusal to pay. However, all the decisions agree that, in the absence of a demand of payment on the day fixed therefor, an action commenced on that day is premature."

"After," as it is used in the context here, must be given full significance. Extension of the time cannot be made until after the obligation shall become due. Likewise, prominence must be given to a prior provision immediately preceding the extension stipulation under consideration. Reference is made to the following: "* * * interest and principal to draw eight per cent after becoming due. [Before due, only six per cent.]" Once more the word "due" is utilized, as well as "become [becoming]." No one will contend that the 8 per cent interest just mentioned came into operation because the makers did not pay the obligation in the morning, but discharged it at the close of the day. Resultantly, "after becoming due," as used in the context last named, must, of necessity, refer to some time later than March 1st. "After becoming due," as there employed, did not include March 1st. Notwithstanding the use of the words "after becoming due," the principal, together with 6 per cent interest, could be paid any time during the day of March 1st, and the 8 per cent provision would not become operative until subsequent to that time. That is, "after becoming due" refers there to some time later than March 1st. Immediately succeeding the language just discussed is the other stipulation, to wit: "and we consent and agree that after this obligation shall become due, the time of payment may be extended," etc. In fact, the very "obligation" which is to become due refers back to the interest and principal, with reference to which there is a provision concerning 8 per cent.

Therefore, the phrase "after becoming due," as utilized in the instrument, does have and was intended to have the same significance as "after the obligation shall become due." Both

phrases are modified by the word "after." If, then, "after becoming due" means the exclusion of the date of payment so far as the 8 per cent interest is concerned, then, of necessity, "after this obligation shall become due," when defining the time for extension, must likewise eliminate said March 1st. These phrases relate to one and the same day. Neither 8 per cent interest nor extension can be had on that day. The net result, therefore, is that the extension must be after maturity. Thus, on the day the note, by its terms, was payable, the makers were permitted to put it out of existence by making full and complete liquidation thereof, so that there could not have been any extension of the same.

Wherefore the instrument is negotiable, and the trial court was in error because it directed a verdict for appellees. Such should have been done in favor of appellant, instead.—*Reversed.*

ALBERT, C. J., and EVANS, FAVILLE, MORLING, and WAGNER, JJ., concur.

DE GRAFF, J., specially concurs.

DE GRAFF, J. (specially concurring).—I concur that the stipulation in the note in the instant case does not make the note nonnegotiable in character. It must be borne in mind that only the makers of the note bound themselves by the terms of the said stipulation, and further, that the makers could not affect the due date until after the due date had arrived. No person could become a holder in due course subsequently to the maturity of this note. The Negotiable Instruments Law not only determines the earmarks of a negotiable instrument, but also defines the conditions upon which a negotiable note shall be transferred in order that it shall possess the characteristic called "negotiability." Therefore, whatever might be done by or with the consent of the makers after due date could not affect negotiability.

The majority opinion cites, *inter alia, Quinn v. Bane,* 182 Iowa 843. I do not understand that this case is cited in this opinion to sustain a reversal of the instant cause; but whether or not, I am not in accord with the *Quinn* case, either in its conclusion or in the reasoning upon which the conclusion is based. It is contrary to the numerical weight of authority. My thought is that, if the payee of a note has obligated himself with the maker

to extend the time by a stipulation in the note, he has thereby made a contract with the maker, mutually binding, to extend the time upon demand of the maker. Such a stipulation clearly makes the note nonnegotiable, and this court, in effect, held this to be the true interpretation in *Cedar Rapids Nat. Bank v. Weber*, 180 Iowa 966.

In the *Weber* case, supra, the stipulation in the note did constitute a contract between the makers and payee, and the payee by the stipulation or contract was obligated to extend the time. On this state of facts, the time of payment of the note was not certain, as it was not payable "at a fixed or determinable future time," and therefore not negotiable. Section 9461, Code of 1924.

The stipulation in the *Quinn* case, supra, was entirely different in essence and legal effect, since the makers only consented "that the time of payment may be extended, from time to time, without notice thereof." There was no obligation on the part of the payee or the holder, as in the *Weber* case, supra, to extend the time of payment.

The stipulation in the note in the case at bar does no violence to any provision of the Negotiable Instruments Act in relation to one of the essentials to make a note negotiable in the first instance,—to wit, a fixed and determinable time of payment.

I concur in the reversal.