STATE BANK OF HALSTAD, Appellant, v. T. S. BILSTAD.

Negotiable instruments: CERTAINTY AS TO TIME OF PAYMENT: NEGO-
1  TIABILITY. A promissory note which by its terms must necessarily become due at some future time, although the exact time is not then known, is negotiable under the Negotiable Instruments Act. The notes in suit were made payable at a fixed date, but contained the following provision: "It is agreed that if the crop on Secs. 25 and 26 Twp. 145-48 is below 8 bushels per acre (for 1905 as to one and 1907 as to the other) this note shall be extended one year." *Held*, the provision did not render the notes non-negotiable; as they were due at a fixed or determinable future date.

**Same:** HOLDER IN DUE COURSE. Under the Negotiable Instruments
2    Act making an antecedent or pre-existing debt a valuable consid-
eration, and defining a holder in due course, a bank taking notes
as collateral security for a pre-existing indebtedness was a holder
in due course for value.

*Appeal from Webster District Court.*—HON. R. M. WRIGHT,
Judge.

THURSDAY, MAY 16, 1912.

THE facts are stated in the opinion.—*Reversed.*

*Frank Farrell* and *A. O. Ueland* and *Vaule & Murphy,*
for appellant.

*William T. Chantland* and *Kelleher & O'Connor,* for
appellee.

SHERWIN, J.—A suit to recover on three promissory
notes executed by the defendant and Jno. M. Hetland. Two
of the notes were drawn payable to the order of Fred B.
Lawrence, and the other to the order of the plaintiff bank.
No defense was interposed to the latter note, but counter-
claims were pleaded as to the other two. The first question
for determination is whether these two notes were negotiable.
They both bore the same date, April 23, 1904, but one was
due December 1, 1905, and the other December 1, 1907. Both
contained the following provision, however: "It is agreed
that if crop on Secs. 25 and 26, Twp. 145-48, is below 8
bushels per acre (for 1905 as to one and 1907 as to the other)
this note shall be extended one year." The appellant con-
tends that the agreement for an extension of the time of pay-
ment did not make the notes non-negotiable, because they
would become due in any event, although the exact time could
not be determined when they were executed, while the appel-
lee insists that the notes were non-negotiable because they were

not due upon a fixed or determinable future time. Although
the notes were made in Minnesota and were payable there,
it is conceded that their character as to negotiability is to be
determined by the law of this state.

Our negotiable instruments act says that an instrument
to be negotiable must be payable on demand or at a fixed or
determinable future time, and section 3060-a4 undertakes to
define what is meant by a determinable future

1. NEGOTIABLE
INSTRUMENTS:
certainty as to
time of pay-
ment: nego-
tiability.

time. It says: "An instrument is payable at
a determinable future time, within the mean-
ing of this act, which is expressed to be pay-
able (1) at a fixed period after date or sight; or (2) on or
before a fixed or determinable future time specified therein;
or (3) on or before a fixed period after the occurrence of a
specified event, which is certain to happen, though the time
of happening be uncertain. An instrument payable upon a
contingency is not negotiable, and the happening of the event
does not cure the defect."

The primary purpose of the several states that have
adopted the negotiable instruments act has been to establish
a uniform rule of law governing such instruments and to
embody in a codified form, as fully as possible, the previous
law on the subject, to the end that the negotiable character
of commercial paper might not be destroyed by local laws
and conflicting decisions, and this object should be kept in
mind in construing the various provisions of the act.

Before the adoption of the act, it was the general hold-
ing of the courts that an instrument to be negotiable must
be certain as to time of payment and certain as to the amount
to be paid, and we think there has been no intent to change
this rule by the enactment of the negotiable instruments act
and that it is still in force.

Under the rule that the time of payment, or, more ac-
curately speaking, the fact of payment, must be certain, it
has been the general holding that, if by its terms the instru-
ment must necessarily become due at some future time, al-

though the exact time be not then known, it is negotiable. *Charlton v. Reed,* 61 Iowa, 166; *Chicago Ry. v. Bank,* 136 U. S. 268 (10 Sup. Ct. 999, 34 L. Ed. 349); *Walker v. Woollen,* 54 Ind. 164 (23 Am. Rep. 639); *Cisne v. Chidester,* 85 Ill. 524; *Wilson v. Campbell,* 110 Mich. 580 (68 N. W. 278, 35 L. R. A. 544); *Bank v. Buttery,* 17 N. D. 326 (116 N. W. 341, 16 L. R. A. (N. S.) 878, 17 Ann. Cas. 52); *Joseph v. Catron,* 13 N. M. 202 (81 Pac. 439, 1 L. R. A. (N. S.) 1120), and case note.

The notes in suit provided for an extension of time for one year on the condition therein named. The time at which they must eventually become due was therefore fixed and certain. The only uncertainty as to the time or fact of payment was whether they should be paid at a particular time in one year, or at the date named in the next year. If the crop of wheat fell below eight bushels per acre in the years named, the payee could not enforce payment until a year later, nor could the maker compel the payee to accept his money sooner than that time. A note, payable on or before a fixed date, has generally been held to be negotiable, and is so declared to be by the Negotiable Instruments Act. And we are quite confident that a note made payable at a fixed time, or at an earlier fixed time at the option of the maker, would be negotiable, because there could be no just distinction drawn between such a case and one where the instrument was to be paid on or before. And, in my judgment, the only difference between the supposed case and the case at bar is to be found in the fact that, in the former case, the maker would decide when the note was payable, while in the instant case it was to be determined by a physical fact which was certain to happen; a distinction which cannot be made unless it be said that a question might have arisen as to the fact whether the crop of wheat was more or less than eight bushels per acre. But, even then, no greater difficulty could arise than is often presented in determining whether a negotiable note is, or is not, due when suit is brought thereon.

In *Charlton v. Reed, supra,* the note was in the following form, so far as it is material here: ''Twelve months after date (or before if made out of the sale of Drake's horse, hay fork and hay carrier) I promise to pay. . . .'' The note was held negotiable, although the payee could have demanded payment before the expiration of twelve months upon proof that the hayfork and hayloader had been sold for enough to pay the note, and, if that be true, no distinction can be made between that case and this. This court also cited therein with approval *Capron v. Capron,* 44 Vt. 410, which held a note negotiable which provided for a definite extension of time, and *Cota v. Buck,* 7 Metc. (Mass.) 588 (41 Am. Dec. 464), to the same effect. In the last case it was said by Shaw, C. J.: ''The true test of the negotiability of a note seems to be whether the undertaking of the promisor is to pay the amount at all events, at some time which must certainly come, and not out of a particular fund or upon a contingent event.'' In *Anniston Loan & Trust Company v. Stickney,* 108 Ala. 146 (19 South. 63, 31 L. R. A. 234), an option was indorsed on the back of the note for its extension for a definite time, if desired, and the note was held negotiable in an able opinion. And in the case note the writer says that there seems to be only one case which is in conflict with that decision, and he then calls attention to our own case of *Miller v. Poage,* 56 Iowa, 96, which we shall hereinafter again refer to. We have given this question a good deal of time and study, and have examined a great many cases bearing upon the question involved, and we have not found a single case, nor have we been cited to one, where it is held that an agreement to extend the time of payment to a certain date destroys the negotiability of the instrument. There are many cases holding that an agreement to extend the time indefinitely renders the note nonnegotiable, but they are not applicable to the facts here. On the other hand, there are a number of cases holding to the contrary doctrine. For a collection of these cases *pro* and *con,* see 17 Ann. Cas. 55, note. See, also, *Bank v.*

*Buttery, supra;* 1 Randolph on Commercial Paper, Sections 111, 112, 113.

In *Woodbury v. Roberts,* 59 Iowa, 348, the note under consideration contained a clause providing as follows: ''The makers and indorsers of this obligation further expressly agree that the payee or his assigns may extend the time of payment thereof from time to time indefinitely as he or they may see fit.'' We held this note nonnegotiable because by its terms it would never fall due, but could be indefinitely extended at the will of the maker, and it was further said: ''When the instrument was executed, the time of its maturity was contingent upon the option of the maker of the note. It was impossible to determine when it would become due by the assent of the maker. The time of payment was uncertain and was not capable of being made certain. . . . Notes which by their terms on or before a fixed time or a specified event are, it is true, uncertain as to the time at which they are payable. But there is no uncertainty as to the time when they become absolutely due. Paper of this character is regarded by the courts as negotiable. But the note before us may never fall due, for payment may be extended indefinitely.'' In *Farmer et al. v. Bank,* 130 Iowa, 469, the note under consideration contained this stipulation: ''Sureties hereby consent that time of payment may be extended from time to time without notice thereof.'' To the contention that this stipulation destroyed the negotiability of the note, we said: ''As we think, the notes met all the requirements for negotiable instruments. There was no uncertainty as to the payee, the amount, or the time of payment. We may concede that, in the case of instruments providing in terms for extension of time of payment indefinitely, there is such uncertainty as to make the same nonnegotiable. . . . But in the notes before us we have a distinct and unqualified agreement on the part of the makers to pay on a certain date.'' The appellees rely upon *Bank v. Carter,* 144 Iowa, 715, and the line of cases it follows. In the *Carter* case a chattel mortgage was given to secure the notes, which con-

tained a provision that the mortgagee might declare all of the notes due if the maker sold or disposed of the whole or a part of the mortgaged property, or if the payee deemed himself insecure, or if default was made in the payment of any note, and we held the time of payment, and the amount thereof, was uncertain and subject to a contingency, and that the notes were therefore nonnegotiable. The case was rightly decided on the authority of *Smith v. Marland,* 59 Iowa, 645, where the note contained a similar provision, and we held that it was nonnegotiable on account of uncertainty as to the amount. In *Culbertson v. Nelson,* 93 Iowa, 187, we also held the note nonnegotiable because of uncertainty in the amount. In *Sawyers v. Campbell,* 107 Iowa, 397, neither time nor amount was involved. The question there was whether an alteration of a nonnegotiable note into a negotiable one released the sureties. " So far as the *Carter* case holds the notes therein considered nonnegotiable because of uncertainty as to time of payment, it should be modified, because the statute expressly makes notes payable on or before a fixed date negotiable." See *State Bank v. Bilstad,* 144 N. W. (Iowa) 363. In *Miller v. Poage, supra,* the note contained an agreement as follows, " If this agent does not sell enough in one year, one more is granted," and it was held that it clearly implied payment from a particular fund and because thereof, "and because payable only on the happening of a condition," it was not negotiable. The decision is not controlling in this case.

Section 3060-a4 expressly says that a note that is payable at a determinable future time, or that is payable on or before a fixed period after the occurrence of a specified event, which is certain to happen, is negotiable. These provisions clearly provide for flexibility in fixing the time of payment, provided only that there shall certainly come a time when the note is, by its terms, due. In other words, they recognize the right of the parties to an instrument to contract for their mutual benefit, and say, in effect, that, if the contract made is certainly to be performed at some definite time in the

future, its negotiability is not destroyed. A determinable future time, as used in the second clause of the section, can mean nothing else than a time that can be certainly determined after the execution of the note. The contingency which will render a note nonnegotiable under the last clause of the section clearly means an event which may or may not happen. A contingency is, in law, an uncertain future event, and, as a contingency may never happen, a note payable only upon the happening thereof may never become due. We think that the meaning of the language used, construed with the other provisions of the section and in the light of former rules. We reach the conclusion that the two notes in question were negotiable, and that the judgment must be reversed because the trial court did not so hold.

It is contended by the appellee that, even if the notes were negotiable, there was evidence tending to show that the plaintiff was not a holder for value in due course, and that this question must finally be determined by a jury.

It may be conceded that there was evidence tending to establish the fact that the notes were given to the bank as collateral security for pre-existing indebtedness only. But **2. SAME: holder in due course.** this does not settle the question. There was no question but that the bank took them, in part at least, as security for a debt that Lawrence then owed the bank, hence the bank was a holder for value and in due course under the negotiable instruments act. Code Supp., Sections 3060-a25 and 3060-a52; *Voss v. Chamberlain,* 139 Iowa, 569.

The authorities relied upon by appellee as supporting his proposition were prior to the enactment of this statute and are not now in force on this point. The defendant's counterclaims were not available against the two notes in suit, and it is unnecessary to discuss questions arising thereon or other questions argued. For the reasons stated, the judgment is *Reversed.*

EVANS, J., dissents.