CEDAR RAPIDS NATIONAL BANK, Appellant, v. PETER WEBER et al., Appellees (14 cases).

BILLS AND NOTES: Instruments Negotiable—Certainty as to Time
1  of Payment—Indefinite Extensions. The element of *certainty* in

time of payment of a promissory note (otherwise negotiable) is destroyed by language therein which imposes a *binding obligation* upon the payee or holder to consent to indefinite extensions of time of payment. *Held,* the following clause rendered a note non-negotiable: "All parties to this note * * * hereby severally * * * consent to extensions of time on this note."

TRIAL: Instructions—Form, Requisites and Sufficiency—Failure to
2  Define Fraud. Failure to define fraud and to state the elements thereof is not reversible error when the instructions clearly and accurately stated the law applicable to the facts; and this is true though complainant objected to said omission *but presented no instruction covering the point.*

*Appeal from Mitchell District Court.*—C. H. KELLEY, Judge.

SATURDAY, SEPTEMBER 22, 1917.

APPELLANT brought separate suits in justice of the peace court in Linn County against each of the following named parties: Peter Weber, Fred H. Towner, Nick Wagner, M. C. Lewis, A. F. Balsley, Mrs. F. Blonigan, Geo. W. Godfrey, Ben Colton, F. A. Bush, Geo. W. Hill, Berte Boughton, and L. W. Andrews, upon the separate note of each. The trial thereof was transferred to Mitchell County, upon the application of defendants, on the ground that there was fraud in the inception of the notes. Action was brought against the defendants Elmo Vining and M. J. Simpson in the district court of Linn County, which was likewise transferred to Mitchell County. The several notes executed by the respective defendants vary to some extent in date and amount, but the form, payee, and place of payment are identical. The portion of the notes material for our consideration upon this appeal is as follows:

"All parties to this note, including sureties, endorsers and guarantors hereby severally waive presentment for payment, notice of non-payment and protest, and consent to extensions of time on this note."

The payee named in the notes is the Cedar Rapids Acetylene Company. They are all made payable at the

Cedar Rapids National Bank, Cedar Rapids, Iowa, and on the back bear the following indorsement:

"For value received I hereby guarantee the payment of the within note at maturity or at any time thereafter, together with a legal attorney fee if suit be instituted hereon, waiving demand, notice of non-payment and protest.

"Cedar Rapids Acetylene Co.,

"Pr. L. S. Wagner."

The defenses urged to each of said notes were: (a) That the same are in form non-negotiable; (b) that their execution was induced by fraud.

The court instructed the jury that each of the notes, except the H. W. Clay note, was non-negotiable, and submitted to the jury the question of fraud in the inception of the notes. The H. W. Clay note was in form negotiable. The jury returned a verdict in favor of all of the defendants except Clay, the verdict being in favor of plaintiff and against him, but was rendered in his favor against the cross-defendants. The cross-defendants were the acetylene gas company and L. S. Wagner, who was the sole proprietor thereof, and who indorsed the notes to appellant. Judgment was rendered in accordance with the verdict of the jury. Plaintiff appeals.—*Affirmed.*

*J. F. Clyde* and *Tourtellott & Donnelly,* for appellant.

*F. C. Bush,* for cross-defendants.

*W. H. Salisbury* and *J. C. Campbell,* for appellees.

STEVENS, J.—The question of fraud in the inception of the notes is not argued by counsel for appellant, and reliance is placed upon the following propositions for reversal: (1) That the notes in controversy are negotiable; (2) that there was not sufficient evidence to justify the submission to the jury of the question whether appellant was an innocent holder of said notes; (3) that the defendants

Towner and Hill waived their rights to rescind their contract, and the defenses urged to their notes, by the continued use of their gas machines after their right of trial for one year had lapsed; (4) that the court committed error in giving and refusing instructions.

I. We will first dispose of the question of the negotiability of the notes. So far as material to the question presented, our negotiable instrument law is as follows:

1. BILLS AND NOTES: instruments negotiable: certainty as to time of payment: indefinite extensions.

"Section 3060-a1. An instrument to be negotiable must conform to the following requirements: * · * *

"3. Must be payable on demand or at a fixed or determinable future time.

"Section 3060-a4. An instrument is payable at a determinable future time, within the meaning of this act, which is expressed to be payable: .

"1. At a fixed period after date or sight; or

"2. On or before a fixed or determinable future time specified therein; or

"3. On or at a fixed period after the occurrence of a specified event, which is certain to happen, though the time of happening be uncertain.

"An instrument payable upon a contingency is not negotiable, and the happening of the event does not cure the defect."

It is asserted by appellee that the quoted extract from the notes renders the time of payment thereof uncertain, and therefore destroys the negotiability of the notes. Each of the notes contains the promise to pay the sum named one year after date, so that, in the absence of the provision referred to, the time of payment would be indefinite. There is apparently some confusion and want of harmony in the decisions in different jurisdictions as to the effect of identical or similar clauses in notes. The attempt to have a

uniform negotiable instrument law throughout the states has not met, apparently, with complete success. The following language, "The makers and indorsers of this obligation further expressly agree that the payee, or his assigns, may extend the time of payment thereof from time to time indefinitely as he or they may see fit," was held, in *Woodbury v. Roberts,* 59 Iowa 348, to render the time of payment uncertain, and the note non-negotiable.

In *Farmer v. Bank of Graettinger,* 130 Iowa 469, it was held that a note containing the following provision was negotiable:

"Sureties hereby consent that time of payment may be extended from time to time without notice thereof."

In *State Bank of Halstad v. Bilstad,* 162 Iowa 433, notes containing the following language, "It is agreed that if crop on Secs. 25 and 26, Twp. 145-48, is below 8 bushels per acre (for 1905 as to one and 1907 as to the other), this note shall be extended one year," were negotiable. In the latter case, the court said:

"We have given this question a good deal of time and study, and have examined a great many cases bearing upon the question involved, and we have not found a single case, nor have we been cited to one, where it is held that an agreement to extend the time of payment to a certain date destroys the negotiability of the instrument. There are many cases holding that an agreement to extend the time indefinitely renders the note non-negotiable, but they are not applicable to the facts here. On the other hand, there are a number of cases holding to the contrary doctrine"— citing *First Nat. Bank v. Buttery,* (N. D.) 116 N. W. 341, and Randolph on Commercial Paper, Sections 111, 112 and 113.

In *Farmer v. Bank of Graettinger,* supra, the court said:

"There was no uncertainty as to the payee, the amount,

or the time of payment. We may concede that in the case of an instrument providing in terms for extension of time of payment indefinitely, there is such uncertainty as to make the same non-negotiable. And such are the cases of *Miller v. Poage,* 56 Iowa 96, and *Woodbury v. Roberts,* 59 Iowa 348, cited and relied upon by counsel. But in the notes before us, we have a distinct and unqualified agreement on the part of the makers to pay on a certain date. And we perceive no good reason for holding that the negotiable character thereof is destroyed because of a clause embodied therein providing that a surety, if such there shall be, will not claim a release from his collateral liability on the instrument, if, forsooth, an extension of time shall be granted the makers without notice to him."

We will now examine a few decisions from other jurisdictions. In the following cases the language quoted was held to render the time of payment uncertain and the notes non-negotiable:

"The payee or his assigns may extend the time of payment thereof from time to time, indefinitely, as he   *   *   * may see fit." *Glidden v. Henry,* (Ind.) 1 N. E. 369.

"Without notice, the payee or holder may extend the time of payment of the principal." *Rosenthal v. Rambo,* (Ind.) 76 N. E. 404.

"This note is given for advancements, and it is the understanding it will be renewed at maturity." *Citizens' Nat. Bank v. Piollet,* (Pa.) 17 Atl. 603.

"The payee or holder of this note may renew or extend the time of payment of the same from time to time as often as required without notice, and without prejudice to the rights of such payee or holder to enforce payment against the makers, sureties, and indorsers, and each of them, parties hereto, at any time when the same may be due and payable." *Second Nat. Bank v. Wheeler,* (Mich.) 42 N. W. 963.

An agreement to extend the time of payment to a time certain has been held not to affect the negotiability of the note. *Anniston Loan & Trust Co. v. Stickney,* (Ala.) 19 So. 63, and *State Bank of Halstad v. Bilstad,* supra.

In the following cases, the time of payment was held uncertain because of the consent of the drawers and indorsers that the holder might extend the time of payment without notice, and the notes, therefore, non-negotiable: *Matchett v. Anderson Foundry & Machine Works,* (Ind.) 64 N. E. 229; *Merchants' & Mechanics' Sav. Bank v. Fraze,* (Ind.) 36 N. E. 378; *Evans v. Odem,* (Ind.) 65 N. E. 755; *Oyler v. McMurray,* (Ind.) 34 N. E. 1004.

In the following cases, in which the language employed was similar, the notes were held negotiable: *First Nat. Bank v. Buttery,* (N. Dak.) 116 N. W. 341; *Stitzel v. Miller,* (Ill.) 95 N. E. 53; *First National Bank v. Baldwin,* (Neb.) 158 N. W. 371; *City National Bank v. Goodloe-McClelland Commission Co.,* 93 Mo. App. 123; *National Bank of Commerce v. Kenney,* (Tex.) 83 S. W. 368; *Jacobs v. Gibson,* 77 Mo. App. 244; *Longmont Nat. Bank v. Loukonen,* (Colo.) 127 Pac. 947; *Missouri-Lincoln Trust Co. v. Long,* (Okla.) 120 Pac. 291.

The decisions in the various cases seem to turn, however, upon the construction given the peculiar wording in each of the several instruments. The only question presented in each of the cases was whether the language used, in effect, rendered the time of payment uncertain. In several of the above cases, the argument of the court supports the holding in the case at bar. We quote the following from *Longmont Nat. Bank v. Loukonen,* supra:

"Does a clause in a promissory note, otherwise clearly negotiable, wherein the makers and indorsers consent to any extensions of time of payment and partial payments before, at or after maturity, render the time of payment indefinite and uncertain, and thus make it nonnegotiable.

because in conflict with the provisions of the negotiable instrument act, that time of payment must be on demand, or at a fixed or determinable future time?  *   *   *   In the recent case of *Pomeroy First National Bank v. Buttery,* 116 N. W. 341, construing a provision essentially like the one under consideration, it was said: 'This provision seems to us to have been inserted to protect the holder against any release of indorsers or others, by an extension without their assent, and the word "makers" is evidently included to prevent any misunderstanding or misconstruction of the contract or failure to distinguish between makers, indorsers, sureties, and any other parties who might be or become liable thereon under certain contingencies as makers. *   *   *   This phrase does not express an agreement to extend time, but leaves the matter of extension optional with the holder, and not obligatory upon him, and the note on its face fixes the time when it becomes due.   In this respect it must be distinguished from a provision to the effect that the time of payment shall be extended indefinitely, in which case the uncertainty of the time renders the instrument nonnegotiable.' The provision under consideration does not mean that the holder can arbitrarily extend the time of payment of the note as he may see fit, over objection by the maker, nor can the latter make an extension without the consent of the holder."

The Supreme Court of New Mexico, in *First National Bank v. Stover,* (N. M.) 155 Pac. 905, having under consideration a clause quite like the one in the case at bar, held the note negotiable.   The court, however, appears to admit that the interpretation adopted does violence to the naked letter of the contract, but on the whole concludes that it was not the intention of the parties to render the time of payment uncertain, and that the note should be held negotiable.

We gather from the great weight of authority that.

where the provision of the note amounts to an agreement by the parties to the note for an extension to an indefinite time, the negotiability of the instrument is thereby destroyed. The language of the note in suit contains a provision by which the maker, payee, sureties, indorsers, and guarantors consent to an extension of time of payment. This language is binding upon the payee, the holder, and the maker. If the maker demands an extension of time, by the terms of the instrument the payee has consented thereto. The failure of the parties to fix a time to which the payment might be extended renders the same uncertain. The language used is not susceptible of any other interpretation. Certainty is required by the negotiable instrument law and by the exigencies and usages of commercial business. While the rule adopted by the Supreme Court of New Mexico, and possibly in some other jurisdictions, although none of the other cases cited supra so hold, is contra, we believe that the language and spirit of the statute can be applied in the case at bar only by holding the instruments in question uncertain as to the time of payment, and non-negotiable.

The conflict in the holdings of the several courts in the several cases cited is more apparent than real. In most of them in which the note was held negotiable, it was quite apparent that the language used was not sufficient to make out a binding obligation upon the payee or holder to grant an extension. The Iowa cases holding that the language used rendered the note negotiable are distinguished from the holding in the other cases by the difference in the effect of the language used. Where the provision of the instrument bound the payee to grant an extension, the note was held non-negotiable; but in the cases, as in *Farmer v. Bank of Graettinger,* supra, where the language used clearly did not impose any obligation upon the payee to grant an extension of time of payment, the notes were held negotiable.

II.   As before stated, it is unnecessary for us to consider the question of fraud in the inception of the notes. The evidence was ample to take the case to the jury.   But it is insisted by counsel for appellant that, under the evidence, there should have been a verdict directed in plaintiff's favor against the defendants Hill and Towner, for the reason that they had used the lighting plant after the expiration of the year allowed for trial, and thereby waived their right to rescind the contract.   We think, however, that this question was properly submitted to the jury, and that its finding is conclusive.

III.   Complaint is also made of the

2. TRIAL: instructions: form, requisites and sufficiency: failure to define fraud.

failure of the court to define fraud and to give the elements thereof.   Fraud is rather hard to define.   The court did, however, in its instructions, clearly and correctly state the law applicable to the facts presented.   While exceptions were taken to the failure of the court in its instructions to define fraud and state the elements thereof, no instruction covering the omission complained of was presented by counsel with the request that same be given to the jury.

On the whole, we think plaintiff had a fair trial, and that the judgment of the lower court should be—*Affirmed.*

GAYNOR, C. J., WEAVER and PRESTON, JJ., concur.