THOMAS QUINN, Appellant, v. WALTER BANE, Administrator, Appellee.

**BILLS AND NOTES:** *Negotiability—Makers Consenting to Extensions.* A promissory note, wherein the *maker* consents that the time of payment may be extended from time to time without notice, is non-negotiable. (Secs. 3060-a1, a4, Code Supp., 1913.)

**BILLS AND NOTES:** Actions—Defenses—Non-Negotiable Instruments. A defense available against the payee of a non-negotiable promissory note is available against his transferee.

*Appeal from Marion District Court.*—LORIN N. HAYS, Judge.

OCTOBER 25, 1917.

REHEARING DENIED FEBRUARY 8, 1918.

ACTION on two promissory notes resulted in the dismissal of the petition. The plaintiff appeals.—*Affirmed.*

*J. D. Cook, W. H. Lyon,* and *L. D. Teter,* for appellant.

*W. G. Vander Ploeg, Crozier & Welch,* and *Clarke & White,* for appellee.

LADD, J.—On July 9, 1914, Patrick Fen-

1. BILLS AND
NOTES: nego-
tiability: mak-
ers consent-
ing to exten-
sions.

ton entered into a written contract with W. J. Hodgins for the purchase of a half section of land in Arkansas. The stipulated price was $24,700; and on the same day, Fenton executed to Hodgins, as payee, two notes, one for $5,000, payable January 1, 1915, and the other for $19,700, payable January 1, 1920, covering the purchase price. The payee, on December 28, 1914, at the instance of the maker, endorsed an extension of the time of payment of the first note to January 15, 1915, and on the same day transferred both notes, without recourse, to the plaintiff. Patrick Fenton departed this life January 2, 1915, and Walter Bane is the administrator of his estate. By the terms of the contract, the notes were to be cancelled and the contract surrendered, if the note for $5,000 was not paid at maturity. It was not so paid, and the administrator interposes three defenses against the allowance or establishment of the notes as claims against the estate: (1) That the notes are not negotiable, and therefore plaintiff took them subject to the conditions contained in the contract; (2) that plaintiff was charged with actual notice of the conditions of the contract, and therefore took the notes subject to conditions therein; and (3) that said notes were

executed in the purchase of real estate, the consideration being the agreement to convey, and said real estate has never been conveyed to the vendee, his representatives, or heirs, but remains the property of the vendor. Another defense was that Fenton was incapable of entering into a contract at the time the notes were signed; but this was not pressed, as there was a directed verdict, upon the introduction of evidence in behalf of plaintiff.

I. First, concerning the conditions contained in the notes, and whether these rendered them non-negotiable. They are in the ordinary form, and made payable, as previously stated, on dates specifically named, and each contains the following clause: "The makers, sureties, and guarantors of this note severally waive presentment for payment, notice of nonpayment, protest, notice of protest, and diligence in bringing suit against any party hereto, and consent that the time of payment may be extended, from time to time, without notice thereof." One of the requisites of a negotiable instrument is that it "be payable on demand or at a fixed or determinable future time." Section 3060-a1, Code Supplement, 1913.

"Section 3060-a4. An instrument is payable at a determinable future time within the meaning of this act, which is expressed to be payable:

"1. At a fixed period after date or sight; or

"2. On or before a fixed or determinable future time specified therein; or

"3. On or at a fixed period after the occurrence of a specified event which is certain to happen, though the time of happening be uncertain.

"An instrument payable upon a contingency is not negotiable, and the happening of the event does not curo the defect."

The contention is that though, but for the clause quoted the note would be payable at a fixed time, said clause ren

ders the time of payment indeterminable. The authorities seem in hopeless conflict as to whether such a clause renders the date of payment uncertain. *Miller v. Poage,* 56 Iowa 96, can hardly be said to be in point; for there the stipulation contained in the note was that, "if this agent does not sell enough in one year, one more is granted." In *Farmer, Thompson and Helsell v. Bank of Graettinger,* 130 Iowa 469, the note contained a stipulation that sureties consent to an extension of time of payment without notice; and in holding that this did not obviate the negotiability of the note, the court, speaking through Bishop, J., said:

"In one branch of his argument, counsel bases a contention upon the assumption that the notes held by plaintiffs were non-negotiable, and this, because of the provision therein respecting sureties. The assumption is not warranted. As we think, the notes met all the requirements for negotiable instruments. There was no uncertainty as to the payee, the amount, or the time of payment. We may concede that, in the case of an instrument providing in terms for extension of time of payment indefinitely, there is such uncertainty as to make the same non-negotiable. And such are the cases of *Miller v. Poage,* 56 Iowa 96, and *Woodbury v. Roberts,* 59 Iowa 348, cited and relied upon by counsel. But in the notes before us, we have a distinct and unqualified agreement on the part of the makers to pay on a certain date, and we perceive no good reason for holding that the negotiable character thereof is destroyed because of a clause embodied therein providing that a surety, if such there shall be, will not claim a release from his collateral liability on the instrument, if, forsooth, an extension of time shall be granted the makers without notice to him. Our attention has been called to no case so holding. As well say that, where sureties, guarantors, and endorsers, entitled to notice of nonpayment, waive the requirement for such notice, the waiver must be given operation to de-

stroy the negotiable character of the instrument. In the brief of points, counsel assert that plaintiffs are not entitled in any event to hold defendant to a liability beyond the amount of the debt secured by the mortgage upon the cattle alleged to have been converted."

There, the note was payable on a day certain, and the decision merely held that this was none the less certain, if therein the surety were bound by any extension the payee or holder might agree upon. In principle, this applies to all of those secondarily liable on a note, as endorsers or guarantors. In *Cedar Rapids Nat. Bank v. Weber*, 180 Iowa 966, the clause construed read, "All parties to this note, including sureties, endorsers, and guarantors, hereby severally * * * consent to extensions of time on this note;" and the court, after reviewing the authorities, and pointing out that this clause was obligatory on the payee or holder, speaking through Stevens, J., observed:

"The Iowa cases holding that the language used rendered the note negotiable are distinguished from the holding in the other cases by the difference in the effect of the language used. Where the provision of the instrument bound the payee to grant an extension, the note was held non-negotiable; but in the cases, as in *Farmer v. Bank of Graettinger*, supra, where the language used clearly did not impose any obligation upon the payee to grant an extension of time of payment, the notes were held negotiable."

See also *State Bank of Halstad v. Bilstad*, 162 Iowa 433, and *Iowa Nat. Bank v. Carter*, 144 Iowa 715, limited by *Des Moines Sav. Bank v. Arthur*, 163 Iowa 205.

Of course, if the payee or holder consents in the note to an extension in advance, no one can know when the maker may elect to pay the note; for he may extend the time of payment indefinitely. If the maker consents to extensions of time of payment without notice, may not the payee or holder do the same thing, and can it be said with

any greater certainty from an inspection of the note when it is payable? In *Woodbury v. Roberts,* 59 Iowa 348, the clause construed was that "The makers and indorsers of this obligation further expressly agree that the payee or his assigns may extend the time of payment thereof from time to time indefinitely as he or they may see fit;" and in holding that this rendered the note non-negotiable, the court said:

"By the terms of the condition of the note in suit it would never fall due, but could be indefinitely extended at the will of the maker and indorser, who, it will be observed, is the same party. When the instrument was executed, the time of its maturity was contingent upon the option of the maker of the note. It was impossible to determine when it would become due by the assent of the maker. The time of payment was uncertain, and was not capable of being made certain. Nothing happened after its execution to remove this uncertainty. Notes which by their terms are payable on or before a fixed time or a specified event, are, it is true, uncertain as to the time at which they are payable. But there is no uncertainty as to the time when they become absolutely due. Paper of this character is regarded by the courts as negotiable. But the note before us may never fall due, for payment may be extended indefinitely."

The decision does not rest on the use of the word "indefinitely," but on the option of the payee or holder to extend from time to time, which might be exercised as often as the time of payment approached. This is made the more apparent from what was said in *Smith v. Van Blarcom,* 45 Mich. 371 (8 N. W. 90), in construing a like condition:

"There is nothing on the face of the note whereby anyone can tell, either directly or by reference to any particular event, at what period this paper will become absolutely payable. We cannot conceive how this can be treated as not payable on a contingency. It would not be easy to

harmonize all the cases on this subject, and we shall not·
attempt to do so.   If any of them maintain that the time
of payment may be indefinitely shifted at the will of any
of the parties, we cannot accept the doctrine.   Public pol-
icy would not be furthered, and honesty would not be sub-
served by encouraging the negotiation of paper which is so
palpably uncertain on its face that no good business man
can look at it without seeing that it must have originated
in peculiar dealings which would probably, if known, qual-
ify its obligation."

This decision was followed in *Second Nat. Bank v.
Wheeler,* 75 Mich. 546 (42 N. W. 963).   In *Glidden v. Hen-
ry,* 104 Ind. 278 (54 Am. R. 316), a clause like that in
*Woodbury v. Roberts,* supra, was construed in the same
way; but in *Matchett v. Anderson F. & M. Works,* 29 Ind.
App. 207 (94 Am. St. 272), and other decisions in that state,
the same doctrine was applied, irrespective of the employ-
ment of the word "indefinitely."   In *Union Stock Yards
Nat. Bank v. Bolan,* 14 Ida. 87 (125 Am. St. 146), the clause
was that time of payment may be extended without notice to
sureties, etc., and makers; and the court held the note not
negotiable, citing the above cases.   See also *Rossville State
Bank v. Heslet,* 84 Kan. 315, (33 L. R. A. [N. S.] 738).

We see no escape from the conclusion that the notes
sued on are non-negotiable, if we are to be consistent with
our holding in *Cedar Rapids Nat. Bank v. Weber,* supra,
that a clause giving the consent of the payee or holder to
an extension, and that in *Woodbury v. Roberts,* that such a
clause with reference to the consent of the maker, deprives
a note of the quality of negotiability it otherwise would have
possessed.   There are cases to the contrary,—indeed the de-
cisions seem to be about equally divided,—but none, as we
think, which do not read into the respective clauses some-
thing not there.   Thus, in *National Bank of Commerce v.
Kenney,* 98 Tex. 293 (83 S. W. 368), the court, in holding
such a note negotiable, said:

"If, as is argued, the effect of the stipulation is to give the right to the maker, without consent of the holder, or to the holder without the consent of the maker, to appoint another day of payment, and. thereby extend the time,· it may be that it would render the instrument non-negotiable. But we do not think it capable of that construction. It does not say that either the holder or the maker may extend the note. It merely makes a provision in case the time of payment may be extended. How extended? It seems to us the extension meant is that which takes place when the debtor and creditor make an agreement, upon a valuable consideration, for the payment of the debt on some day subsequent to that previously stipulated. The obvious purpose of the provision, taken as a whole, was merely to relieve the holder of the paper from the burdens made necessary by the rigid requirements of the mercantile law in order to secure the continued liability of the endorsers and sureties upon the paper. Therefore, what was meant by the stipulation as to extension of time was simply that, in case the holder and the maker should agree upon an extension, the sureties and endorsers should not be discharged. The holder and maker of any note may, at any time, agree upon an extension; therefore, the fact that they may have the right does not affect the negotiability of the paper."

It seems needless to say that the maker and payee or holder might extend the payment, had the maker's consent thereto not been inserted in the note; and, though one of the canons of construction require that effect be given to all the language employed, if possible, the court here eliminated one class,—namely, "makers,"—from the clause, in order to reach its conclusion that the note is negotiable. The Supreme Court of North Dakota was even more ingenious in avoiding what seems to be the evident meaning of the clause; for, in *First Nat. Bank v. Buttery,* 17 N. D. 326 (16 L. R. A. [N. S.] 878, 17 Am. & Eng. Ann. Cas. 52, it, speaking through Spaulding, says:

"It is strenuously argued that the use of the word 'makers' in the waiver admits of an extension being made at any time on the part of the holder, by a mere secret mental process, unknown to any other party. This may be true, as a psychological fact, but we do not deem it so as a matter of practice in commerce and banking. To us it is clear that it has the same effect as though the note read 'on the 1st day of October, 1903, or thereafter on demand,' in which case there would be no question of its negotiability. Holders of notes do not, by a secret mental process, make an extension of the time of payment; but such extension, if made at all, is made by an agreement between the principal debtor and the holder of the paper, either with or without the consent of the indorsers. This provision seems to us to have been inserted to protect the holder against any release of indorsers or others, by an extension without their assent, and the word 'makers' is evidently included to prevent any misunderstanding or misconstruction of the contract, or failure to distinguish between makers, indorsers, sureties, and any other parties who might be or become liable thereon under certain contingencies as makers."

As we think, there is no room for construction of clauses such as are contained in these notes. The payee or holder only might extend the time of payment; and, in the plainest language possible to be employed, the stipulation is that this may be done without notice, and that the maker consents thereto. No other or additional agreement is essential; and at the instance of anyone secondarily liable thereon, the time of payment may be postponed without consulting the wishes of the maker,—yes, without his knowledge. If so, surely the time of payment is uncertain to the maker at least, and no one other than the payee can say, from inspection of the note, when it will mature. Under Section 3060-a4, Code Supplement, 1913, an instrument with such a clause is not payable at a determinable time unless

"on or before a fixed or determinable time specified therein."
If, at the option of the payee or holder, a note may be ex-
tended regardless of the wishes of the maker, neither a fixed
nor determinable time of payment is "specified therein."
On the contrary, such time depends on what the payee or
holder may subsequently conclude to do.  In our opinion,
the notes sued on are not negotiable, and plaintiff acquired
them subject to the defense interposed. '

2. BILLS AND
NOTES: ac-
tions: de-
fenses: non-
negotiable in-
struments.

II.  The notes were given as evidence of
the purchase price to be paid for 320 acres
of land, and these and the contract were
parts of the same transaction.  By the terms
of the contract, Hodgins undertook to con-
vey the land to Fenton upon the full payment of the pur-
chase price; and among other things, it was stipulated that
Fenton deliver to Hodgins (which he did) three promissory
notes payable to Fenton, one for $56.07, dated January 21,
1914, due one year thereafter, and signed by William and
Anna Visser, and two for $250 each, dated March 17, 1914,
one payable February 1, 1915, and the other September 1,
1914, and signed by C. E. Sutherland; that, "if this contract
should be forfeited or annulled by the failure of the party
of the second part to pay the said note for $5,000, executed
and delivered to the party of the first part by party of
the second part for part of the purchase money of said land,
when due, which note is described above, then the party of
the second part shall forfeit to the party of the first part
the said note for $56.07, executed to the party of the second
part by William Visser and Anna Visser, and the said two
notes executed to the party of the second part by C. E.
Sutherland for $250 each, and said rental contract between
C. E. Sutherland and the party of the second part, all of
which have been delivered with this contract by the party of
the second part to the party of the first part.  And the
party of the first part shall have the right to keep and col-

lect said note of William Visser and Anna Visser and said notes of C. E. Sutherland for $250 each, and appropriate to his own use all the sums he may collect thereon. * * * But, in case the party of the second part shall fail to pay to the party of the first part the said note executed by the party of the second part to the party of the first part for $5,000, promptly when the same becomes due, without any failure or default, time being the essence of this contract, then this contract shall, from the date of such failure, be absolutely null and void, and all rights and interests hereby created or then existing, in favor of the party of the second part, or derived by him under this contract, shall utterly cease and determine, and the premises hereby contracted for shall revert to and revest in the party of the first part and his assigns, without any declaration of forfeiture or act of re-entry, or without any other act of the party of the first part to be performed, as absolutely fully and perfectly as if this contract had never been made, and, in that event, the party of the first part shall surrender to the party of the second part the said two notes, executed to him for the purchase money for said land, and the party of the second part shall surrender to the party of the first part this contract, without any right in the party of the second part of reclamation or claim against the party of the first part, for or on any account or reason whatever."

Neither Fenton nor the administrator paid the note for $5,000; and under the conditions quoted, the sale terminated, the land reverting to Hodgins, and the notes became of no effect, and Hodgins was bound to surrender them. Plaintiff took the notes subject to the same defenses which might have been interposed had Hodgins sued, and therefore the court rightly held that, by the terms of the contract, the notes were not collectible.

There was no error in directing a verdict for administrator.—*Affirmed.*

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.