FARMERS NATIONAL BANK OF OSKALOOSA, Appellee, v. ALBERT
STANTON et al., Appellants.

**BILLS AND NOTES:** Actions—Fraud Available on Nonnegotiable
1 Note Though Consent to Transfer Given. Fraud in the execution
of a nonnegotiable promissory note is available to the maker against
a transferee, even though the maker *knew*, when he executed the
note, that such party was to become such transferee, and even
though the maker *consented* to such transfer.

**BILLS AND NOTES:** . Actions—Nonnegotiable Note With Contract
2 Calling for Negotiable Note—Effect. The right of the maker of a
nonnegotiable promissory note to plead fraud in the execution of
the note is in no wise lessened by the fact that, prior to the execu-
tion of the nonnegotiable note, a contract was entered into which
provided that the contemplated note should be negotiable.

**EVIDENCE:** Relevancy, Competency, and Materiality. Testimony as
3 to what a third party *knew* or had *consented to* is incompetent.

*Appeal from Mahaska District Court.*—D. W. HAMILTON, Judge.

MAY 3, 1921.

ACTION at law to recover from defendants the amount al-
leged to be due to the plaintiff upon a promissory note. Trial
to a jury. Verdict and judgment for plaintiff, and defendants
appeal.—*Reversed.*

*Thomas J. Bray* and *John E. Lake,* for appellants.

*Burrell & Devitt, McCoy & McCoy,* and *David S. David,*
for appellee.

WEAVER, J.—The action is brought upon a promissory note
for $5,000 and interest, executed by the defend-
ants and made payable to the order of the
Lower System of Merchandising. It bears date
of August 23, 1916, and is made payable six
months thereafter. Embodied in the instru-
ment is a clause as follows:

1. BILLS AND
NOTES: actions:
fraud available
on nonnegotiable
note though
consent to
transfer given.

"And we hereby authorize the holder hereof to extend the payment of the same or any part thereof from time to time by reception of interest in advance or otherwise without impairing our several or joint liabilities."

Alleging that it is the owner of this note, and that the debt is wholly unpaid, the plaintiff bank asks judgment thereon.

Defendant admits the making of the note, but denies all liability thereon. By way of affirmative answer, the defendants plead that the note is nonnegotiable, is wholly without consideration, and was obtained from them by fraud. They allege that the same was given for 375 shares of the capital stock in a corporation known as the Lower System of Merchandising; and that such purchase was made and the note given at the solicitation and by the procurement of Robert Green, W. E. Lower, and G. J. Thomas, officers of said corporation, who falsely represented to the defendants the financial standing and condition of the corporation. They further allege that they believed and relied upon said representations, and in reliance thereon gave the note in suit; that, in truth and in fact, said corporation proved to be a mere sham, without capital or assets; and that the shares of stock were absolutely worthless.

Replying to this defense, the plaintiff alleges that it purchased the note in due course for a valuable consideration, and without notice of any infirmities therein or of the existence of any defense thereto. It further alleges that defendants made the note, knowing that it was to be negotiated to the plaintiff, and with such knowledge assured the plaintiff that the note was all right, and by reason thereof defendants are now estopped to plead or prove the defenses set up in their answer.

The case was tried to a jury, which returned a verdict for plaintiff for the full amount of the note.

Notwithstanding the very extended briefs of counsel on either side, an examination of the record leads us to conclude that the result of this appeal must turn principally upon few propositions. So far as the case depends in any degree on the settlement of disputed facts, the verdict of the jury would seem to be final, and we shall not attempt their discussion. The debatable questions in this court are those arising upon exceptions taken to the court's charge to the jury.

I.   Among other things, the court instructed as follows:
" (Paragraph 4.) You are instructed that the note sued upon,
which has been admitted in evidence as Exhibit A *is a nonnego-
tiable note, and that said note is subject to all the defense in the
hands of the plaintiff bank that it would have been subject to
had suit been brought thereon by the Lower System of Merchan-
dising,* the payee named in said note.   Therefore, if the defend-
ants have established their defense of false and fraudulent re-
presentations by a preponderance of the evidence, guided by
these instructions, then your verdict should be for the defend-
ants, unless you find that the plaintiff has established by a pre-
ponderance of the evidence its plea of estoppel, as explained
hereafter in these instructions."

Referring again to the plaintiff's plea of estoppel, the court,
in Paragraph 10, used the following language (the italics are
ours) :

"If, when you have considered all the evidence in this case
and weighed the same in the light of these instructions, you do
not find that there was fraud in the inception of the note, and
that it was wholly without consideration when given by the de-
fendants to the Lower System of Merchandising, then your
verdict must be for the plaintiff for the full amount of the note,
with interest thereon according to the terms of the note.   But, if
you find from a preponderance of the evidence that the note in
suit was procured by the Lower System of Merchandising from
the defendants by and through fraudulent representations made
by Robt. B. Green, W. E. Lower, G. J. Thomas, or some one of
them, and that it was wholly without consideration, then your
verdict should be for the defendants; *unless you further find
by a preponderance of the evidence that the plaintiff, in good
faith, purchased the said note for a valuable consideration, and
that the defendants knew that said note was to be negotiated,
and consented thereto prior to the time that the plaintiff obtained
said note, then you are instructed that, even though you find
that said note was obtained from the defendants through fraud
and false representations, as claimed by them, they would be
estopped from setting up the claim of fraud as a defense to
said note in the hands of the plaintiff.*"

Still further, upon the same topic, the court again charged:

" (Paragraph 19.) *You are instructed that, if you find that the defendants, at the time they executed the note in suit, knew it was to be transferred to the plaintiff, and if they had reason to believe that the plaintiff was about to purchase said note for a valuable consideration, they must suffer the loss, if any they have sustained thereby;* because it is a maxim of the law that, when one of two persons must be made to suffer from fraud or misconduct of another, that the one who placed it within the power of such persons to perpetrate the fraud or do the wrong must bear the loss; *and the defendants, believing or having reason to believe that their signing of said note would cause the plaintiff to part with a valuable consideration for the same, could not remain silent and now be heard to say that said note was obtained by fraud and without consideration.*"

To this was added Paragraph 20, as follows:

"You are instructed that, if you find from the evidence that, *at the time of the execution of said note by the defendants, that they had knowledge of the fact that said note was to be sold to the plaintiff bank, and acquiesced therein, and that, at the time of the transfer of said note to the plaintiff bank, the cashier of said plaintiff bank was advised that the defendants had notice of the fact that said note was to be sold to said bank, and that the bank, in purchasing said note, relied upon the assurance given to said bank that the defendants acquiesced in the bank purchasing the said note, then and in that event, if you so find from a preponderance of the evidence, the defendants would be estopped from asserting any defense to said note upon the ground of fraud or misrepresentations,* and if you so find, your verdict must be for the plaintiff in the sum of the amount of said note, together with interest from the date of execution thereof."

Before entering upon a discussion of the instructions, it may be well to say that the defendant's evidence was such as fairly tended to show that the "Lower System of Merchandising" was a worthless concern, being promoted by men who had taken to themselves more than half its authorized shares of $100,000, for which they had never paid; that they concentrated their efforts upon the defendants, and, by the usual acts and blandishments and persuasions which characterize such enterprises, induced them to buy several thousand dollars "worth" of the stock at

the specially favorable rate of $16 per share, when, so far as the record shows, such shares had no value whatever. This is, of course, not very material, if defendants are estopped to defend against suit by the plaintiff; but if, under the law, they are not so estopped, then their right to plead and prove the facts ought not to be disregarded.

As will be seen by the first instruction above quoted, the court held that the note is nonnegotiable, and, in the absence of estoppel, is subject to all the defenses in a suit by the bank which would have been available to the defendants, had the suit been brought by the Lower System of Merchandising itself. This is undoubtedly correct. We have frequently held that a note containing a condition by which the holder can extend time of payment indefinitely is nonnegotiable (*Cedar Rapids Nat. Bank v. Weber*, 180 Iowa 966, *Quinn v. Bane*, 182 Iowa 843); and, the trial court having so instructed, it was the law of the case for the jury. There is some doubt whether the rule stated in the quoted paragraph is quite consistent with other instructions given in the charge, but its correctness is not open to serious question. It being conceded, then, as it must be, that the note is nonnegotiable, we reach the vital question whether defendants were in any manner estopped to plead and prove their alleged defense to the suit brought upon such note by the bank, as an alleged innocent purchaser. Another pertinent form of the inquiry is whether the court erred in its charge to the jury concerning the law applicable to the pleaded estoppel.

That the maker of a note having a good defense to an action thereon may estop himself to take advantage of it cannot be doubted. But can it be said that the maker of a nonnegotiable note is estopped to rely on any defense he may have thereto, simply because he knows that the payee taking the note intends to negotiate it, or will negotiate it, or is likely to negotiate it to a third person? We think this must be answered in the negative. Nonnegotiable paper is assignable under our statute and practice; and, while the common-law requirement that the assignee of such paper must sue, if at all, in the name of the payee, thereby opening the door to all defenses which the maker could plead, had the paper never changed hands, has been abolished, and the assignee may sue in his own name, the maker's right

to defend still exists undiminished. The rules pertaining to innocent holders are peculiar to the law of commercial paper, and a nonnegotiable instrument is *not* commercial paper, and the assignee of it acquires no other or higher right than was held by his assignor. *Tabor v. Foy,* 56 Iowa 539, 542; *Lutton v. Baker,* 187 Iowa 753. Every man executing a nonnegotiable note does it, knowing it may be sold or disposed of to another, and every person buying such paper knows that he takes it subject to every defense which would have been available to the maker, had it not been negotiated. He owes the world no duty to stand on guard and publish warning to others that he preserves the right to defend against its collection by a transferee, if it shall happen that there is ground for such defense. The note itself carries such warning on its face. It may well be that, if the maker of such note, *knowing the existence of a good defense, encourages* or advises another to purchase it, he may estop himself from making such defense against the suit of one whom he has thus deceived or misled. But surely, it cannot be true that the mere fact that he *"has reason to believe"* that the payee of his nonnegotiable note intends to sell it, or put it up as collateral at the bank, will deprive him of his right to defend when sued thereon. It may well be that, at the time the note is given, the maker has no knowledge or suspicion of the fraud which has been practiced upon him, or that he will have any defense to the note when it shall fall due. How, then, can he be estopped by his silence concerning a matter of which he has no knowledge? The language we have quoted from the tenth paragraph of the charge is especially open to criticism on this ground. There, the jury were told "that, if the defendants, at the time of making the note, knew, *or had reason to know*, that plaintiff was about to purchase it for a valuable consideration, they [defendants] must suffer the loss," because they could not be permitted "to remain silent and now be heard to say the note was obtained by fraud and without consideration." The vice of this instruction is at once apparent, when we stop to reflect that it is speaking of the situation at the very moment of the execution of the note, when presumably defendants believed they were receiving value therefor, and had neither knowledge nor suspicion that they were being made the victims of fraud and misrepresentation. How

could they justly be held culpable for being "silent" as to facts
of which they were ignorant? Was not the very fact that the
note was nonnegotiable sufficient notice to the bank that, in
purchasing the same, it took the risk of any defense thereto which
might have been asserted against it in the hands of the man or
men to whom it was given? The idea that an estoppel arose
against the defendants on such ground was greatly emphasized
by the trial court by its repetition in three or four different forms
and in different connections; and the jury, if obedient thereto,
could not have done otherwise than find for the plaintiff. The
prejudicial character of such misdirection is evident, and a re-
versal must necessarily result.

II.   The evidence discloses that, about the time the note
was given, a written agreement between defendants and the
Lower System of Merchandising was entered into, for the pur-
chase of the stock, and, in specifying the manner
of the payment of the price therefor, defendants
agreed to make and deliver to the seller "their
negotiable promissory note for $5,000;" and it
is suggested in argument that this undertaking
is entitled to weight in determining the rights of the parties to
this litigation. We think it immaterial. The note given is
confessedly nonnegotiable, and the jury was so instructed. Its
character, as such, is in no manner affected by the terms of the
other contract, and it is by the law applicable to nonnegotiable
instruments that the case is to be governed.

2. BILLS AND
NOTES: actions:
nonnegotiable
note with con-
tract calling for
negotiable note:
effect.

III.   There is no evidence that plaintiff, before buying the
note, made any inquiry of the defendants for information con-
cerning it, or received from the defendants any assurance relat-
ing to it. The witness Green, who acted for
the merchandising corporation in selling the note
to the bank, testified, over defendants' objection,
that, in making such sale, he informed the cashier, who acted for
the bank, that defendants knew of the purpose to cash the note
and consented thereto; and, as we understand the record, the
cashier claims that he relied upon such information in making the
purchase. It is with apparent reference to this testimony that
the court, in the twentieth paragraph of its charge, speaks of the
"*cashier being advised that defendants had notice of the fact*

3. EVIDENCE:
relevancy, com-
petency, and
materiality.

*that the note was to be sold to the bank, and that the bank, in purchasing the note, relied upon the assurance given to said bank that the defendants acquiesced in the bank's purchasing said note."* For reasons already sufficiently stated, the mere knowledge or consent or acquiescence of the defendants concerning the purpose of the corporation to sell, or of the bank to buy the note, could not affect the right of defendants, when sued by the bank, to assert any defense which would have been available to them if sued by the payee. Moreover, it must be said that the objection to the evidence here referred to should have been sustained and the testimony excluded, as being both incompetent and immaterial.

IV. It is said for the appellee that the jury found that there was no fraud in the inception of the note, and that, such being the case, the judgment against defendants must stand. The record does not show any such finding. There was, it is true, a general verdict for the plaintiff, but this by no means implies a finding that there was no fraud; for, under the court's instructions, to which we have referred, the jury may have believed that such fraud was, in fact, perpetrated, but, yielding to the erroneous instructions on the question of estoppel, returned their verdict accordingly. There was no special finding or verdict on the issue of fraud in the inception of the note, and the court cannot say or assume that such issue was found in plaintiff's favor.

V. The appellant takes many other exceptions to rulings made and instructions given by the trial court. Some of the objections so made are not without merit, but they involve less material features of the case, which are not likely to appear on a retrial, and we will not prolong this opinion for their consideration.

For the reasons hereinbefore stated, the judgment below will be reversed, and the cause remanded to the district court for a new trial.—*Reversed.*

EVANS, C. J., STEVENS and DE GRAFF, JJ., concur.