SECOND NATIONAL BANK OF NEW HAMPTON, Appellant, v. LAWRENCE G. MIELITZ, Appellee.

No. 40552.

NOVEMBER 18, 1930.

*Geiser & Donohue,* for appellant.

*W. H. Salisbury* and *Elbert K. Hendricks,* for appellee.

MORLING, C. J.—I. Jury was waived, and case tried to the court. The case is not reviewable here *de novo.* The trial court's

findings of fact must be sustained if there is evidence to support them, regardless of our views upon the weight of the evidence.

The note sued upon is payable to the order of S. R. Ure, and contains this provision: "The makers and endorsers of this note each * * * agree to extension of time from time to time by any  one of the signers." By the rule of this jurisdiction, the note is nonnegotiable. *Cedar Rapids Nat. Bank v. Weber*, 180 Iowa 966; *Quinn v. Bane*, 182 Iowa 843; *Farmers Nat. Bank of Oskaloosa v. Stanton*, 191 Iowa 433; *Townsend v. Adams*, 207 Iowa 326.

II.   The note in suit is dated March 11, 1926, due in six months, for $450, payable to Farmers & Merchants Bank, Riceville, and signed by the defendant in his individual name, without qualification of capacity in which he signs.

The Farmers & Merchants Bank of Riceville, also known as S. R. Ure & Company, was a partnership, of which S. R. Ure was one of the partners. Heschke and wife gave to S. R. Ure & Com-  pany a note for $2,400, dated May 23, 1924, due in five years, with acceleration clause, secured by mortgage. C. A. Mielitz, defendant's father, purchased this note and mortgage of S. R. Ure & Company, taking from them an assignment, by which they guaranteed payment. C. A. Mielitz died December 13, 1925, leaving a will which was admitted to probate February 16, 1926, and by which defendant was made residuary legatee, and appointed executor. Plaintiff obtained defendant's note here sued upon, March 17, 1926. Defendant learned, about August 6, 1926, that the note was held by plaintiff. The Heschke note, though in default, has not been paid. Defendant's claim is that his father purchased of S. R. Ure & Company the Heschke paper on their guaranty and agreement that, if the father needed money at any time, the bank would let him have it, or cash the paper; that, pursuant to this agreement, he told Ure that he needed money to settle up the affairs of the estate, and asked him to cash the Heschke mortgage; that Ure said he would advance defendant $450 on the Heschke paper, and later would probably be able to take it up; and that the $450 was credited to defendant by Ure, and the note sued on given as a memorandum of the transaction. Plaintiff argues that defendant held the Heschke

paper as executor, and not as residuary legatee; that S. R. Ure & Company's guaranty of that paper was held by defendant in a different capacity from that in which he signed the note, and therefore the respective liabilities thereon were not subject to offset; that the testimony of the alleged verbal agreement tended to vary or contradict the terms of the note; that the evidence does not sustain defendant's contention.

Plaintiff's argument is based upon its abstract, but the defendant has filed amendment to abstract, and the amendment is not denied. According to the amendment, defendent testified:

"The debts of the estate were in fact paid from money borrowed to pay them. The debts were paid from my share of the property in my father's estate. I took over the rest, residue, and remainder of this property, and paid the debts. * * * Q. Did you know who held and claimed the Heschke note and mortgage or the amounts that might be derived therefrom at the time this note, Exhibit A, was given [the $450 note sued on]? A. Yes, sir, I did."

Defendant further testified, with respect to the signing of the note sued upon, that he had a talk with Ure in the bank. "Q. How did you happen to go into the bank at the time that you had this talk with him?" This is objected to by the plaintiff as asking for conclusion, and self-serving. The objection is overruled. The witness answered the question as follows:

"It was necessary for me to secure some money, to straighten up affairs of my father's estate, and so I asked Mr. Ure if he would cash this Heschke mortgage for me, the payment of which his bank had guaranteed. I told Mr. Ure that I needed the money to settle up estate affairs in my father's estate. Mr. Ure then told me that times were hard at that time, and said, 'Well, times are a little hard now,'—and advised me to keep the mortgage, and said that he would do the best he could, and that he would advance about $450; and he then wanted a note, to show the advancement or payment of the $450, and so I gave my note to Mr. Millbrandt [cashier] at the time,—there were really two times."

The witness continued: "The Heschke note and mortgage is the one I asked Mr. Ure to cash at that time, and the $450 was

advanced on that Heschke note and mortgage. * * * Mr. Ure said * * * that later, he would probably be able to take up that Heschke mortgage; this Heschke mortgage wasn't due for three or four years at that time. * * * I stated to Mr. Ure that my reason for asking them to cash the Heschke mortgage was because I needed some money to straighten up some affairs of my father's estate, and because I understood that he had arrangements with my father, when he purchased these mortgages of the firm of S. R. Ure & Company, to the effect that, if my father needed money at any time, that the bank would let him have it, or cash one of these mortgages. * * * Q. And did he say as to whether or not there had been such arrangement with your father? (Mr. Donohue: The same objection, and leading and suggestive.) A. Yes, sir; he said that that had been the arrangement, but that times just then were hard; but that he wanted to do the best he could, and would advance $450 * * * he would be able to take up the rest of the Heschke mortgage. * * * Q. Well, what, if anything, further did Mr. Ure say about the Heschke mortgage, the first time you talked with him on that subject? A. Well, Mr. Ure said, at the time, that things just then were a little hard, but that he would advance $450 then, and that, when things got better, he would take up more of this Heschke mortgage; and that this note was made out as a memorandum of the transaction, and I was given credit for the $450, and that about consummated the transaction.''

Plaintiff moved to strike the statement that the note was made out as a memorandum, as incompetent, and the opinion and conclusion of the witness. Objection was overruled. The witness stated:

''Exhibit A is not the note which was given at that time. The facts are that the first note was given for the same amount, but to it I signed my name as executor of the estate of C. A. Mielitz. Then later, I was called up by Mr. Millbrandt, and the next day I came in, and he said that they wanted it signed by me personally; and a new note was drawn up at that time, and Exhibit A is the note which was then drawn up, and signed by me.''

This testimony is not disputed. It is substantially in accord with the allegations of the answer, which was not attacked. The court found that the defendant was the owner of the note and

222

mortgage given by the Heschkes at the time the note sued upon was given; "that the note sued on was not a loan to the defendant, Lawrence G. Mielitz, but an advancement on the amount due from the S. R. Ure & Company bank on the Heschke note and mortgage; that this was the agreement when said note sued on was executed by the defendant; that this agreement is still outstanding; that the parol evidence offered to show this agreement and the objection thereto by the counsel for plaintiff is overruled; that the plaintiff herein stands in no better position than would the original payee, the Ure & Company bank; (4) that the defendant, Lawrence G. Mielitz, has a right to offset his claim which he has against the S. R. Ure & Company bank against the plaintiff bank in this cause."

Plaintiff contends that the court erred in admitting "the testimony of Lawrence G. Mielitz wherein he testified that he took over the Heschke note and mortgage as his own, and as a part of the residue of his father's estate."

The evidence shows that, at first, defendant executed a note for the $450 as executor. Afterwards, the execution was changed so as to evidence his personal liability. Whether defendant held the Heschke paper as executor or individually, it was competent for Ure and defendant to agree that Ure should advance or pay the $450 upon Ure's guaranty; that defendant should give a note for the amount; and that the note should be offset upon the guaranty, or the proceeds used in reduction of the liability on the guaranty. *McGuinness v. Kyle,* 208 Mass. 443 (94 N. E. 700); 34 Cyc. 649. This is substantially the agreement pleaded, and found by the court to have been made. According to the amendment to the abstract, testimony that defendant held and claimed the Heschke note and mortgage at the time he borrowed the $450 was not objected to, and the objection that the alleged oral agreement would vary the terms of the written agreement was not made. See, however, *McGuinness v. Kyle,* 208 Mass. 443 (94 N. E. 700). There was evidence in the record sustaining the finding and judgment of the court. Whether the finding is in accordance with the weight of the evidence is not here subject to review.—*Affirmed.*

EVANS, FAVILLE, KINDIG, and GRIMM, JJ., concur.